UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| IN THE MATTER OF:<br><br>**Renegade Holdings, Inc.,**<br>**Alternative Brands, Inc., and**<br>**Renegade Tobacco Co.**<br><br>Debtors | Case No. 09- *50140*<br>Case No. 09- *50141*<br>Case No. 09- *50143*<br>Chapter 11 |
| --- | --- |
| **Motion For Authority To Use Cash Collateral** ||

Now come Renegade Holdings, Inc. ("RHI"), Alternative Brands, Inc. ("ABI") and Renegade Tobacco Co. ("RTC" and collectively, the "Debtors"), and move the Court pursuant to §363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure as follows:

1      On January 28, 2009 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code and an Order for relief was entered. The Debtors continue in possession of their respective assets and operate their businesses as debtors-in-possession.

2      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

**Background**

3      Renegade Holdings, Inc. and its subsidiaries, Alternative Brands, Inc. and Renegade Tobacco Company, Inc., are leading fabricators and distributors of premium tobacco products. The company markets its cigarette brands Tucson® and Tracker® and little cigar brands, Hombre® and Vendetta® through wholesalers and retailers in 19 states and for export. Alternative Brands, Inc. is also a high-quality state-of-the-art contract fabricator for private label brands of cigarettes and little cigars.

4      For the last two years, Renegade Holdings, Inc. and affiliated companies have been involved in numerous litigation proceedings with various states over interpretation of various provisions of the Master Settlement Agreement statutes. As a result, one of the affiliated entities

Cash coll motion 20090125

1

filed for bankruptcy protection and was subsequently liquidated as a part of a negotiated settlement with the National Association of Attorney Generals.

5       The Debtors' remaining listed brands were delisted in multiple states, which resulted in these brands being held out of the market for several months in 2007. The states required penalties of over $539,000 to be paid in order to relist the remaining brands. During this process the Debtors incurred over $2.3 million in legal fees.

6       During 2008, the Debtors were required to deposit nearly $5.7 million into the MSA escrow funds accounts, which now total $29 million. The Debtors were able to secure new debt financing in early 2008, allowing the Debtors to restructure and operate through the remainder of the year.

7       The Debtors are also required make nearly $6.8 million of additional MSA escrow deposits for sales made during the calendar years of 2007 and 2008. In spite of these challenges, the Debtors concluded 2008 with improving volumes and operational cash flow, and overall prospects for recovery remain strong.

**Bank of the Carolinas**

8       Bank of the Carolinas ("BofC") is a creditor of the Debtors with respect to (i) a Term Loan in the original principal amount of $3,675,000 (the "Term Loan") and outstanding balance as of the Petition Date of approximately $3,235,237, and (ii) a Revolving Line of Credit in the maximum amount and outstanding balance as of the Petition Date of approximately $3,000,000 (the "Revolving Line" and together with the Term Loan the "BofC Indebtedness").[1]

9       BofC asserts liens, security interests and setoff rights against certain of the Debtors' assets, including but not limited to

       a.      A security interest in accounts receivable of ABI and RTC having an aggregate value as of the Petition Date of approximately $2,143,516.

       b.      A security interest in inventory of ABI and RTC having an aggregate value as of the Petition Date of approximately $4,912,000.

       c.      A pledge and right of setoff against a restricted account of ABI maintained at BofC in the amount of approximately $1,211,134.

---

[1] BofC also holds other indebtedness of Phelps and/or other affiliates of the Debtors. Upon information and belief, such other indebtedness is not secured by property of the Debtors.

Cash coll motion 20090125

2

d.  A pledge and right of setoff against an escrow account of ABI maintained at BofC in the amount of approximately $491,141.

e.  A pledge of the right to receive interest from an escrow account maintained at SunTrust Bank pursuant to ABI's obligations to maintain escrow funds for the states in which ABI does business, in the approximate amount $29,000,000.

f.  A security interest in 51% of the stock in RHI.

g.  Liens on or security interests in other property owned by Calvin A. Phelps ("Phelps") or affiliates of the Debtors.

10    The Debtors do not believe that any other creditors have or assert liens upon or security interests in the Debtors' inventory or accounts receivable, or the proceeds thereof.

11    The Debtors have not yet had an opportunity to fully review, evaluate or take a definitive position as to the BofC claims. However, the Debtors' initial assessment is that BofC is properly perfected and has a first lien upon the Debtors' assets pledged to secure the BofC Indebtedness. The Debtors reserve for themselves, any Committee of Unsecured Creditors subsequently created, and any trustee subsequently appointed, any and all rights to challenge, avoid, object to, set aside or subordinate any of the aforesaid claims, liens, security interests or rights of setoff.

12    The proceeds of the accounts receivable, inventory, and restricted accounts of the Debtors subject to the BofC liens or security interests would constitute "cash collateral" as that term is defined in the Bankruptcy Code, the use of which is subject to the restrictions set forth in § 363.

**Relief Requested**

13    The Debtors are dependent upon continued and uninterrupted use of the proceeds from collections on its accounts receivable, and from future accounts generated by the sale of its inventory, for revenue. While the Debtors have unrestricted cash in its accounts as of the Petition Date, the Debtors will need to receive and use the proceeds of inventory and accounts to pay on-going costs of operating, insuring, preserving, and protecting the business and property of the estate. If not permitted to use the cash collateral of BofC to pay its ordinary operating expenses, the Debtors will have to close down operations forthwith. Such precipitous action, if required, would render reorganization impossible and severely reduce the fair market value of the estate, resulting in financial loss to all parties in interest. To that end, the Debtors request the Court to authorize the use of cash collateral as set forth herein.

14    An order granting interim relief, followed by a final hearing at some future date selected

by the Court, would not prejudice the rights of BofC, the only creditor asserting an interest in cash collateral, and BofC will be adequately protected for such use by a replacement lien on post-petition accounts and inventory. The use of such funds is necessary to continue operations without interruption and will generate new receivables and preserve the value of the estate for all creditors.

15    The Debtors offer to provide BofC with adequate protection by:

a.    Making adequate protection payments to BofC equal to the interest accruals on the BofC Indebtedness, at the contract non-default rate and in arrears commencing March 1, 2009 and on or before the first day of each month thereafter pending further orders of this Court.

b.    Limiting the use of cash collateral as generally projected in the attached budget, pending further orders of the Court after notice and hearing.

c.    Providing BofC with a continuing post-petition lien and security interest in all property and categories of property of the Debtors in which and of the same priority as said creditor held a similar, unavoidable lien as of the Petition Date, and the proceeds thereof, whether acquired pre-petition or post-petition (the "Post-petition Collateral"), equivalent to a lien granted under Section 364(c)(2) and (3) of the Bankruptcy Code, but only to the extent of cash collateral used. The validity, enforceability, and perfection of the aforesaid post-petition liens on the Post-Petition Collateral shall not depend upon filing, recordation, or any other act required under applicable state or federal law, rule, or regulation. If BofC hereafter requests the Debtors to execute and deliver financing statements or other such instruments or documents reasonably considered by said creditor to be necessary or desirable to further evidence the perfection of liens and security interest herein granted, the Debtors would be authorized and directed to execute and deliver such financing statements, instruments, and documents to BofC without further notice, hearing, or order.

d.    Providing BofC with an administrative expense claim to the extent the use of cash collateral, after application of the proceeds of the replacement collateral, results in a decrease in the value of such entity's interest in such property.

e.    Providing BofC with (i) financial reports for the Debtors in form and frequency

reasonably acceptable to BofC and (ii) if requested, an audited financial statement for the Debtors within a reasonable time.

f.     Notwithstanding the lien therein granted to BofC to secure the Debtors' use of its cash collateral, such creditor shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner/operator" with respect to the operation or management of the Debtors solely by virtue of any terms or conditions of the Order.

16     The Debtors seek authority to use cash collateral through and including the effective date of a confirmed plan of reorganization or liquidation, or the conversion of this case to Chapter 7, whichever may first occur; provided, however, without further notice and hearing the Debtors may not use cash collateral for any purpose other than operations in the ordinary course of business or the payment of allowed administrative fees, costs, or expenses, irrespective of whether such purpose would be proper under applicable law.

17     The Debtors propose that to the extent that BofC has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished to said creditor, or objects to a proposed budget or to a specific manner in which cash collateral is being used, then said creditor may, upon ten (10) days notice to the Debtors and opportunity to cure: (i) seek an order of the Bankruptcy Court restraining such payments or usage as not being in conformity with this Motion; or (ii) seek an Order terminating further authority to use cash collateral altogether.

18     The Debtors seek the consent of BofC to the use of cash collateral for the limited purposes set forth in this Motion. In the absence of such consent, if not forthcoming, the Debtors ask the Court to authorize such use and to provide adequate protection to such creditor to the extent the use of cash collateral impairs such creditor's interest, in a manner and to the extent to be determined by the Court at the hearing on this Motion.

Wherefore, the Debtors pray the Court for the following relief:

1.     That an interim order in the form attached hereto as an exhibit be entered by this Court after notice and interim hearing (i) authorizing the Debtors to use cash collateral in an amount to be determined at the interim hearing based upon the proposed budget attached hereto, and (ii) providing BofC with adequate protection as set forth herein.

2.     That a final hearing be held regarding this motion, the interim order, and the Debtors'

request for a final order, after providing such notice as is required by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

3.      Such other relief as the Court may deem necessary and proper.

RESPECTFULLY submitted on behalf of the Debtors, this the 28th day of January, 2009.

/s/ John A. Northen

**Counsel for the Debtors:**
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25762
vlp@nbfirm.com
Stephanie Osborne-Rodgers, NCSB #29374
sor@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441

Cash coll motion 20090125

6

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

| IN THE MATTER OF:<br><br>**Renegade Holdings, Inc.,**<br>**Alternative Brands, Inc., and**<br>**Renegade Tobacco Co.**<br><br>**Debtors** | **Case No. 09-_____**<br>**Case No. 09-_____**<br>**Case No. 09-_____**<br>**Chapter 11** |
|---|---|
| **First Order Authorizing Interim Use of Cash Collateral and Providing Notice of Hearing** ||

This matter came before the Court after due notice and hearing to consider the "Motion for Authorization to Use Cash Collateral" (the "Motion") filed by Renegade Holdings, Inc. ("RHI"), Alternative Brands, Inc. ("ABI") and Renegade Tobacco Co. ("RTC" and collectively, the "Debtors"), pursuant to §363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure. After considering the matters set forth in the Motion, the evidence presented, and the comments of parties in interest, the Court makes the following findings, conclusions and orders:

1      On January 28, 2009 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code and an Order for relief was entered. The Debtors continue in possession of their respective assets and operate their businesses as debtors-in-possession.

2      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3      Bank of the Carolinas ("BofC") is a creditor of the Debtors with respect to (i) a Term Loan in the original principal amount of $3,675,000 (the "Term Loan") and outstanding balance as of the Petition Date of approximately $3,235,237, and (ii) a Revolving Line of Credit in the maximum amount and outstanding balance as of the Petition Date of approximately $3,000,000 (the "Revolving Line" and together with the Term Loan the "BofC Indebtedness").

4      BofC asserts liens, security interests and setoff rights against certain of the Debtors' assets, including but not limited to

Cash coll order #1 20090125

1

EXHIBIT

a. A security interest in accounts receivable of ABI and RTC having an aggregate value as of the Petition Date of approximately $2,143,516.

b. A security interest in inventory of ABI and RTC having an aggregate value as of the Petition Date of approximately $4,912,000.

c. A pledge and right of setoff against a restricted account of ABI maintained at BofC in the amount of approximately $1,211,134.

d. A pledge and right of setoff against an escrow account of ABI maintained at BofC in the amount of approximately $491,141.

e. A pledge of the right to receive interest from an escrow account maintained at SunTrust Bank pursuant to ABI's obligations to maintain escrow funds for the states in which ABI does business, in the approximate amount $29,000,000.

f. A security interest in 51% of the stock in RHI.

g. Liens on or security interests in other property owned by Calvin A. Phelps ("Phelps") or affiliates of the Debtors.

5    The Debtors do not believe that any other creditors have or assert liens upon or security interests in the Debtors' inventory or accounts receivable, or the proceeds thereof.

6    The Debtors have not yet had an opportunity to fully review, evaluate or take a definitive position as to the BofC claims, but believe that BofC is properly perfected and has a first lien upon the Debtors' assets pledged to secure the BofC Indebtedness. The Debtors have reserved for themselves, any Committee of Unsecured Creditors subsequently created, and any trustee subsequently appointed, any and all rights to challenge, avoid, object to, set aside or subordinate any of the aforesaid claims, liens, security interests or rights of setoff.

7    The proceeds of the accounts receivable, inventory, and restricted accounts of the Debtors subject to the BofC liens or security interests would constitute "cash collateral" as that term is defined in the Bankruptcy Code, the use of which is subject to the restrictions set forth in § 363.

8    The Debtors are dependent upon continued and uninterrupted use of the proceeds from collections on its accounts receivable, and from future accounts generated by the sale of its inventory, for revenue. While the Debtors have unrestricted cash in its accounts as of the Petition Date, the Debtors will need to receive and use the proceeds of inventory and accounts to pay on-going costs of operating, insuring, preserving, and protecting the business and property of the estate. If not permitted to use the cash collateral of BofC to pay its ordinary operating expenses,

the Debtors will have to close down operations forthwith. Such precipitous action, if required, would render reorganization impossible and severely reduce the fair market value of the estate, resulting in financial loss to all parties in interest.

9       An order granting interim relief, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of BofC, the only creditor asserting an interest in cash collateral, and BofC will be adequately protected for such use by a replacement lien on post-petition accounts and inventory. The use of such funds is necessary to continue operations without interruption and will generate new receivables and preserve the value of the estate for all creditors.

10      The Debtors seek authority to use cash collateral through and including the effective date of a confirmed plan of reorganization or liquidation, or the conversion of this case to Chapter 7, whichever may first occur; provided, however, without further notice and hearing the Debtors may not use cash collateral for any purpose other than operations in the ordinary course of business or the payment of allowed administrative fees, costs, or expenses, irrespective of whether such purpose would be proper under applicable law.

Based upon the foregoing, the Court concludes that interim use of cash collateral is necessary and that an Order granting interim relief, followed by a final hearing upon due notice, would not prejudice the rights of BofC, and for good and sufficient reasons appearing it is hereby ORDERED as follows:

1       The Debtor may use Cash Collateral on an interim basis and for the period through and including February 28, 2009, in an aggregate amount not to exceed $_____, for the purposes and subject to the sub-limits as set forth in the budget for such period, a copy of which is attached hereto as **Exhibit A.** The Debtor may not use cash collateral for any purpose other than operations in the ordinary course of business or the payment of allowed administrative fees, costs, or expenses, irrespective of whether such purpose would be proper under applicable law, without further notice and hearing.

2       As adequate protection for the use of cash collateral:

      a.      The Debtors shall make adequate protection payments to BofC equal to the interest accruals on the BofC Indebtedness, at the contract non-default rate and in arrears commencing March 1, 2009 and on or before the first day of each month thereafter pending further orders of this Court.

b.    BofC shall have a continuing post-petition lien and security interest in all property and categories of property of the Debtors in which and of the same priority as said creditor held a similar, unavoidable lien as of the Petition Date, and the proceeds thereof, whether acquired pre-petition or post-petition (the "Post-petition Collateral"), equivalent to a lien granted under Section 364(c)(2) and (3) of the Bankruptcy Code, but only to the extent of cash collateral used. The validity, enforceability, and perfection of the aforesaid post-petition liens on the Post-Petition Collateral shall not depend upon filing, recordation, or any other act required under applicable state or federal law, rule, or regulation. If BofC hereafter requests the Debtors to execute and deliver financing statements or other such instruments or documents reasonably considered by said creditor to be necessary or desirable to further evidence the perfection of liens and security interest herein granted, the Debtors are hereby authorized and directed to execute and deliver such financing statements, instruments, and documents to BofC without further notice, hearing, or order.

c.    BofC shall have an administrative expense claim to the extent the use of cash collateral, after application of the proceeds of the replacement collateral, results in a decrease in the value of such entity's interest in such property.

d.    The Debtors shall provide BofC with (i) financial reports for the Debtors in form and frequency reasonably acceptable to BofC and (ii) if requested, an audited financial statement for the Debtors within a reasonable time.

e.    Notwithstanding the lien therein granted to BofC to secure the Debtors' use of its cash collateral, such creditor shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner/operator" with respect to the operation or management of the Debtors solely by virtue of any terms or conditions of the Order.

3    To the extent that BofC has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished to said creditor, or objects to a proposed budget or to a specific manner in which cash collateral is being used, then said creditor may, upon ten (10) days notice to the Debtors and opportunity to cure: (i) seek an order of the Bankruptcy Court restraining such payments or usage as not being in conformity

with this Motion; or (ii) seek an Order terminating further authority to use cash collateral altogether.

4        Notwithstanding any suspension or termination of the right to use cash collateral (a "Termination Date"), the Debtor shall be permitted to carve out from cash collateral or any replacement collateral and use an aggregate amount necessary to pay all Permitted Trailing Expenses. As used herein, the term "Permitted Trailing Expenses" shall mean, on the Termination Date, the following expenses to the extent incurred post-petition and prior to such Termination Date but in an aggregate amount not to exceed the aggregate expenditures set forth in the approved budget through such Termination Date:

     a.     Unpaid salary or other employee benefits accrued through such Termination Date and all related payroll taxes.

     b.     Any amounts deducted or to be deducted from an employee's wages that accrued on or before such Termination Date, but only the extent that Debtor has not paid over or contributed such deducted amounts to the appropriate recipient.

     c.     Quarterly fees to the United States Bankruptcy Administrator pursuant to 28 U.S.C. § 1930(a)(7).

     d.     Professional fees and expenses for professionals for the Debtor and the Committee (if formed), so long as such fees and expenses are ultimately awarded by a final order of the Court (and BofC shall not be entitled to object to the allowance of fees and expenses applied for by professionals solely on the grounds of asserting a higher priority or entitlement to such funds including without limitation any claims based upon §§ 507(b) or 361 of the Bankruptcy Code).

5        The terms of this Order shall be binding upon any Committee (if formed), and upon any trustee subsequently appointed, including but not limited to a Chapter 7 trustee upon conversion of this case to a case under Chapter 7 of the Bankruptcy Code; provided however, the findings, conclusions, or orders set forth herein are made on an interim basis, shall not constitute a final decision on any legal or factual issue, and are without prejudice to the right of any party to raise, contest, or seek the same or a different outcome at any subsequent hearing.

6        A further hearing (which may be a final hearing) on this Motion will be held at _____ o'clock a.m. on February ___, 2009, in the U.S. Bankruptcy Court, 226 S. Liberty St., Winston-Salem, N.C. 27101, at which time the Court will further consider the Motion for Authorization

To Use Cash Collateral.

7      Debtor's counsel shall serve a copy of this Order upon the parties listed in the Limited Service List and file a certificate of such service with the Clerk.  ·

Case 09-30145    Doc 55    Filed 02/28/09    Page 13 of 16

| Week Beginning | 26-Jan | 2-Feb | 9-Feb | 16-Feb | 23-Feb | 2-Mar | 9-Mar | 16-Mar | 23-Mar | 30-Mar | 6-Apr | 13-Apr | 20-Apr |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| Beginning Cash Balance | 944,000 | 1,142,307 | 1,501,802 | 1,577,786 | 1,567,030 | 1,516,654 | 1,941,299 | 1,922,433 | 1,945,328 | 2,270,102 | 2,451,897 | 2,788,939 | 2,693,095 |
| **Sources of Cash** | | | | | | | | | | | | | |
| AR Collections | 702,131 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 |
| Other Sources | - | | | | | | | | | | - | - | - |
| Total Collections | 702,131 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 | 721,798 |
| **Uses of Cash** | | | | | | | | | | | | | |
| Health Insurance Payment | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Payroll & Taxes | 155,000 | 155,000 | 155,000 | 155,000 | 155,000 | | 155,000 | 215,000 | 155,000 | | 155,000 | 215,000 | 155,000 |
| Professional Services Payments | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Attorney Fees | - | - | - | - | - | - | - | - | - | - | 40,000 | - | - |
| Bankruptcy court fees | | | | - | - | - | - | - | - | 13,000 | - | - | |
| Bank Fees | | | | | | | | | | | | | |
| Raw Material Payments | 250,000 | 300,000 | 250,000 | 200,000 | 200,000 | 200,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 |
| Machinery Rent Expense PTM | | | | 215,000 | | | | 215,000 | | | | 215,000 | |
| EMPLYER MATCH-RETIRE PLAN | | | | 926 | | | | 926 | | | | 926 | |
| PAYROLL PROCESSING FEES | | | | 524 | | | | 524 | | | | 524 | |
| REPAIRS & MAINT - BUILDING | 938 | 938 | 938 | 938 | 938 | 938 | 938 | 938 | 938 | 938 | 938 | 938 | 938 |
| REPAIRS & MAINT - SHOP EQUIP | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 |
| REPAIRS & MAINT - COMPUTERS | 652 | 652 | 652 | 652 | 652 | 652 | 652 | 652 | 652 | 652 | 652 | 652 | 652 |
| REPAIRS & MAINT - LAWN SER | | | | 400 | | | | 400 | | | | 400 | |
| DIESEL - FUEL OIL | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| RENTS - EQUIP | | | | 17,003 | | | | 17,003 | | | | 17,003 | |
| COMMISSIONS | | | | 7,900 | | | | 7,900 | | | | 7,900 | |
| TAXES & LICENSES | | | | 250 | | | | 250 | | | | 250 | |
| PROPERTY TAXES | | | | | | | | | | | | | |
| LICENSES & PERMITS | | | | 519 | | | | 519 | | | | 519 | |
| SALES & USE TAXES | | | | 250 | | | | 250 | | | | 250 | |
| OTHER TAXES | | | | 100 | | | | 100 | | | | 100 | |
| ADV & PROMO - SPONSORSHIP | | | | - | | 35,000 | 20,000 | 20,000 | | | | 5,000 | |
| ADV & PROMO - SAMPLES | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| ADV & PROMO - TRADE SHOW | 1,500 | | | 1,500 | | | | 1,500 | | | | 1,500 | |
| ADV & PROMO - OTHER | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| AIRCRAFT EXPENSES | | - | - | - | - | - | - | - | - | - | - | - | - |
| SHOP SUPPLIES | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 |
| OFFICE EXPENSES | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| OFFICE SUPPLIES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| POSTAGE | 300 | 300 | 300 | 250 | 250 | 250 | 250 | 200 | 200 | 200 | 200 | 200 | 200 |
| EXPRESS DELIVERY | 500 | 500 | 500 | 500 | 400 | 400 | 400 | 400 | 300 | 300 | 300 | 300 | 300 |
| PRINTING AND REPRODUCTION | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| EMPLOYEE RELATED EXPENSES | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| COMPUTER RELATED EXPENSES | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| GAS & ELECTRIC | | | | 10,272 | | | | 10,272 | | | | 10,272 | |
| PROPANE | | | | 3,895 | | | | 3,895 | | | | 3,895 | |
| WATER | | | | 328 | | | | 328 | | | | 328 | |
| SECURITY | | | | 154 | | | | 154 | | | | 154 | |
| TRASH REMOVAL | | | | 2,615 | | | | 2,615 | | | | 2,615 | |
| TELEPHONE | | | | 3,963 | | | | 3,963 | | | | 3,963 | |
| INSURANCE | | | | 235 | | | | 235 | | | | 235 | |
| PROPERTY AND LIABILITY | | | | 8,086 | | | | 8,086 | | | | 8,086 | |

C:\Documents and Settings\Jan\Local Settings\Temporary Internet Files\Content.Outlook\OFR70NUY\Cash Flow Plan 1 (2) RHI ABI RTC Cash Flow Budget

1/27/2009

**EXHIBIT**

A



| Week Beginning | 26-Jan | 2-Feb | 9-Feb | 16-Feb | 23-Feb | 2-Mar | 9-Mar | 16-Mar | 23-Mar | 30-Mar | 6-Apr | 13-Apr | 20-Apr |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| AUTO EXPENSES | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| INSURANCE | | | | 1,977 | | | | 1,977 | | | | 1,977 | |
| LICENSES | | | | 247 | | | | 247 | | | | 247 | |
| GAS | | | | 7,902 | | | | 7,902 | | | | 7,902 | |
| OTHER VEHICLE EXPENSES | - | - | - | - | - | - | - | - | - | - | - | - | - |
| DUES & SUBSCRIPTIONS | | | | | | | | | | | | | |
| DUES & SUBS - NON-DED | | | | | | | | | | | | | |
| LODGING | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| MEALS & ENTERTAINMENT | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| TRAVEL | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| TRAINING & EDUCATION | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| SEMINAR FEES | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| | | | | | | | | | | | | | |
| Rent Ken Dwiggins | 9,000 | | | | 9,000 | | | | 9,000 | | | | 9,000 |
| Rent Milling Road | 6,230 | | | | 6,230 | | | | 6,230 | | | | 6,230 |
| Rent 321/323 Farmington Road | 18,500 | | | | 18,500 | | | | 18,500 | | | | 18,500 |
| Rent 325 Farmington Road (Primary Processing) | 18,200 | | | | 18,200 | | | | 18,200 | | | | 18,200 |
| Rent Store 601 | 1,500 | | | | 1,500 | | | | 1,500 | | | | 1,500 |
| Rent Store Store 1 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Total Operating Cash Requirement | 503,824 | 343,894 | 448,894 | 526,391 | 452,174 | 278,744 | 343,744 | 492,741 | 397,024 | 201,594 | 383,594 | 477,641 | 397,024 |
| | | | | | | | | | | | | | |
| Fed Excise Tax | | | 120,000 | | 320,000 | | 320,000 | | | 320,000 | | 320,000 | |
| State Excise Tax | | | | 185,000 | | | | 185,000 | | | | | |
| Tobacco buy out | | | | | | | | | | | | | |
| Net escrow | | | | | | | | | | | | | |
| Other Escrow | | | | | | | | | | | | | |
| Sales Tax Collected | | | | | | | | | | | | | |
| Tobacco Stamps | | | | 20,000 | | | | 20,000 | | | | 20,000 | |
| Total Tax, Escrow & TBO | | | 120,000 | 205,000 | 320,000 | - | 320,000 | 205,000 | - | 320,000 | - | 340,000 | - |
| Cash Generated from Operations | 198,307 | 377,904 | 152,904 | (9,594) | (50,376) | 443,054 | 58,054 | 24,056 | 324,774 | 200,204 | 338,204 | (95,844) | 324,774 |
| | | | | | | | | | | | | | |
| Loan P&I Payments | | | | | | | | | | | | | |
| Auto Notes | 409 | 409 | 420 | 1,162 | 409 | 409 | 420 | 1,162 | | 409 | 1,162 | 409 | 409 |
| BoC LOC Interest Payment | 18,000 | 18,000 | | | 18,000 | 18,000 | | | | 18,000 | | | 18,000 |
| BoC Loan Payment | | | 76,500 | | | | 76,500 | | | | | | |
| Total Note Payments | 18,409 | 18,409 | 76,920 | 1,162 | 18,409 | 18,409 | 76,920 | 1,162 | - | 18,409 | 1,162 | - | 18,409 |
| Net Cash Flow | 198,307 | 359,495 | 75,984 | (10,756) | (50,376) | 424,645 | (18,866) | 22,894 | 324,774 | 181,795 | 337,042 | (95,844) | 306,365 |
| Ending Cash Balance | 1,142,307 | 1,501,802 | 1,577,786 | 1,567,030 | 1,516,654 | 1,941,299 | 1,922,433 | 1,945,328 | 2,270,102 | 2,451,897 | 2,788,939 | 2,693,095 | 2,999,460 |

C:\Documents and Settings\jan\Local Settings\Temporary Internet Files\Content.Outlook\OFR70NUYY\Cash Flow Plan 1 (2) RHI ABI RTC Cash Flow Budget

1/27/2009

| | 27-Apr | 4-May | 11-May | 18-May | 25-May | 1-Jun | 8-Jun | 15-Jun | 22-Jun | 29-Jun | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Beginning** / Week | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | |
| Beginning Cash Balance | $ 2,999,460 | $ 1,935,744 | $ 2,272,786 | $ 2,176,943 | $ 2,483,308 | $ 2,618,092 | $ 2,955,134 | $ 2,860,790 | $ 3,165,655 | $ 3,301,939 | |
| **Sources of Cash** | | | | | | | | | | | |
| AR Collections | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 16,581,686 |
| Other Sources | | $ | | | | | | | | | $ - |
| Total Collections | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 721,798 | $ 16,928,476 |
| **Uses of Cash** | | | | | | | | | | | |
| Health Insurance Payment | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 345,000 |
| Payroll & Taxes | | $ 155,000 | $ 155,000 | $ 155,000 | $ 155,000 | $ 155,000 | $ 215,000 | $ 155,000 | $ 155,000 | $ 155,000 | $ 1,860,000 |
| Professional Services Payments | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 260,000 |
| Attorney Fees | | $ 40,000 | | | | $ 40,000 | | $ 40,000 | | $ 40,000 | $ 160,000 |
| Bankruptcy court fees | | | | | | | | | | $ 13,000 | $ 26,000 |
| Bank Fees | | | | | | | | | | | $ - |
| Raw Material Payments | $ 150,000 | $ 150,000 | $ 150,000 | $ 150,000 | $ 150,000 | $ 150,000 | $ 150,000 | $ 150,000 | $ 150,000 | $ 150,000 | $ 3,950,000 |
| Machinery Rent Expense PTM | | | 215,000 | | | | 215,000 | | | | 1,075,000 |
| EMPLOYER MATCH-RETIRE PLAN | | | 926 | | | | 926 | | | | 4,630 |
| PAYROLL PROCESSING FEES | | | 524 | | | | 524 | | | | 2,621 |
| REPAIRS & MAINT - BUILDING | 938 | 938 | 938 | 938 | 938 | 938 | 938 | 938 | 938 | 938 | 21,575 |
| REPAIRS & MAINT - SHOP EQUIP | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 5,665 | 130,287 |
| REPAIRS & MAINT - COMPUTERS | 652 | 652 | 652 | 652 | 652 | 652 | 652 | 652 | 652 | 652 | 14,989 |
| REPAIRS & MAINT - LAWN SER | | | 400 | | | | 400 | | | | 2,000 |
| DIESEL - FUEL OIL | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 2,300 |
| RENTS - EQUIP | | | 17,003 | | | | 17,003 | | | | 85,017 |
| COMMISSIONS | | | 7,900 | | | | 7,900 | | | | 39,500 |
| TAXES & LICENSES | | | 250 | | | | 250 | | | | 1,250 |
| PROPERTY TAXES | | | | | | | | | | | - |
| LICENSES & PERMITS | | | 519 | | | | 519 | | | | 2,595 |
| SALES & USE TAXES | | | 250 | | | | 250 | | | | 1,250 |
| OTHER TAXES | | | 100 | | | | 100 | | | | 500 |
| ADV & PROMO - SPONSORSHIP | | | 5,000 | | | | 5,000 | | | | 70,000 |
| ADV & PROMO - SAMPLES | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 5,750 |
| ADV & PROMO - TRADE SHOW | | | 1,500 | 1,500 | 1,500 | 1,500 | | 1,500 | | | 9,000 |
| ADV & PROMO - OTHER | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 11,500 |
| AIRCRAFT EXPENSES | | | | | | | | | | | - |
| SHOP SUPPLIES | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 17,009 |
| OFFICE EXPENSES | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 4,600 |
| OFFICE SUPPLIES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 11,500 |
| POSTAGE | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 5,100 |
| EXPRESS DELIVERY | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 8,100 |
| PRINTING AND REPRODUCTION | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 23,000 |
| EMPLOYEE RELATED EXPENSES | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 4,600 |
| COMPUTER RELATED EXPENSES | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 4,600 |
| GAS & ELECTRIC | | | 10,272 | | | | 10,272 | | | | 51,361 |
| PROPANE | | | 3,895 | | | | 3,895 | | | | 19,475 |
| WATER | | | 328 | | | | 328 | | | | 1,640 |
| SECURITY | | | 154 | | | | 154 | | | | 772 |
| TRASH REMOVAL | | | 2,615 | | | | 2,615 | | | | 13,076 |
| TELEPHONE | | | 3,963 | | | | 3,963 | | | | 19,817 |
| INSURANCE | | | 235 | | | | 235 | | | | 1,173 |
| PROPERTY AND LIABILITY | | | 8,086 | | | | 8,086 | | | | 40,431 |

| Week Beginning | 27-Apr | 4-May | 11-May | 18-May | 25-May | 1-Jun | 8-Jun | 15-Jun | 22-Jun | 29-Jun | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Week | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | |
| AUTO EXPENSES | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 6,900 |
| INSURANCE | | | 1,977 | | | | 1,977 | | | | 9,884 |
| LICENSES | | | 247 | | | | 247 | | | | 1,237 |
| GAS | | | 7,902 | | | | 7,902 | | | | 39,508 |
| OTHER VEHICLE EXPENSES | - | - | - | - | - | - | - | - | - | - | - |
| DUES & SUBSCRIPTIONS | | | | | | | | | | | - |
| DUES & SUBS - NON-DED | | | | | | | | | | | - |
| LODGING | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 11,500 |
| MEALS & ENTERTAINMENT | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 5,750 |
| TRAVEL | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 23,000 |
| TRAINING & EDUCATION | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 1,150 |
| SEMINAR FEES | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 1,150 |
| | | | | | | | | | | | - |
| Rent: Ken Dwiggins | | | 9,000 | | | | | 9,000 | | | 54,000 |
| Rent: Milling Road | | | 6,230 | | | | | 6,230 | | | 37,380 |
| Rent: 321/323 Farmington Road | | | 18,500 | | | | | 18,500 | | | 111,000 |
| Rent: 325 Farmington Road (Primary Processing) | | | 18,200 | | | | | 18,200 | | | 109,200 |
| Rent: Store 601 | | | 1,500 | | | | | 1,500 | | | 9,000 |
| Rent: Store Store 1 | | | | | | | | | | | - |
| Total Operating Cash Requirement | 188,594 | 383,594 | 477,641 | 397,024 | 190,094 | 383,594 | 476,141 | 398,524 | 188,594 | 396,594 | 8,727,679 |
| | | | | | | | | | | | - |
| Fed Excise Tax | | | | | | | | | | | - |
| State Excise Tax | 320,000 | | 320,000 | | 320,000 | | 320,000 | | 320,000 | | 3,000,000 |
| Tobacco buy out | | | | | | | | | | | 370,000 |
| Net Escrow | 1,000,000 | | | | | | | | | | 1,000,000 |
| Other Escrow | 200,000 | | | | | | | | | | 200,000 |
| Sales Tax Collected | | | | | | | | | | | |
| Tobacco Stamps | | | 20,000 | | | | 20,000 | | | | 100,000 |
| Total Tax, Escrow & TBO | 1,520,000 | - | 340,000 | - | 320,000 | - | 340,000 | - | 320,000 | - | 4,670,000 |
| Total Generated from Operations | (986,796) | 338,204 | (95,844) | 324,774 | 211,704 | 338,204 | (94,344) | 323,274 | 213,204 | 325,204 | 3,184,007 |
| | | | | | | | | | | | - |
| Loan P&I Payments | | | | | | | | | | | |
| | | | | | | | | | | | |
| Auto Notes | 420 | 1,162 | | 409 | 420 | 1,162 | | 409 | 420 | 1,162 | 11,526 |
| BoC LOC Interest Payment | | | | 18,000 | | | | 18,000 | | | 108,000 |
| BoC Loan Payment | 76,500 | | | | 76,500 | | | | 76,500 | | 382,500 |
| Total Note Payments | 76,920 | 1,162 | - | 18,409 | 76,920 | 1,162 | - | 18,409 | 76,920 | 1,162 | 502,026 |
| Net Cash Flow | (1,063,716) | 337,042 | (95,844) | 306,365 | 134,784 | 337,042 | (94,344) | 304,865 | 136,284 | 324,042 | 2,681,981 |
| Ending Cash Balance | 1,935,744 | 2,272,786 | 2,176,943 | 2,483,308 | 2,618,092 | 2,955,134 | 2,860,790 | 3,165,655 | 3,301,939 | 3,625,981 | 3,625,981 |

C:\Documents and Settings\jan\Local Settings\Temporary Internet Files\Content.Outlook\OFR70NUY\Cash Flow Plan 1 (2) RHI ABI RTC Cash Flow Budget