UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| IN THE MATTER OF: Renegade Holdings, Inc., et al  Debtors | Case No. 09-50140 Chapter 11 Consolidated for Administration |
|---|---|
| **Motion To (A) Approve Sale Of Substantially All Assets, (B) Establish Bidding Procedures And Approve Break-up Fee, (C) Transfer Any And All Claims, Liens, Encumbrances And Interests In Sale Assets To Proceeds Of Sale, (D) Approve Form And Manner Of Notice Of Sale, (E) Assume And Assign Certain Leases And Executory Contracts, And (F) Schedule Hearings To Establish Sales Procedures And Confirm Sale** ||

Now come Renegade Holdings, Inc. ("RHI"), Alternative Brands, Inc. ("ABI") and Renegade Tobacco Co. ("RTC" and collectively, the "Debtors"), and move the Court pursuant to §§ 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9006 of the Federal Rules of Bankruptcy Procedure as follows:

1   On January 28, 2009 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code and an Order for relief was entered. The cases have been consolidated for purposes of administration only by order entered on February 11, 2009. On August 18, 2010, the Court appointed Peter L. Tourtellot as Chapter 11 Trustee for the Debtors ("Trustee").

2   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

**Background**

3   The Debtors previously filed and obtained confirmation of the Amended Joint Plan of Reorganization Dated October 1, 2009 (the "Prior Plan") by Order entered April 23, 2009. The "Settling States" (the participating states in conjunction with the Master Settlement Agreement) filed a notice of appeal, and also filed a motion to reconsider the Order confirming the Prior Plan based on new information. Following an evidentiary hearing, the Court determined that material information should have been disclosed to creditors and the Order confirming the Prior Plan was vacated.

4      The Trustee is now preparing and intends to propose, in conjunction with the matters set forth in this Motion, a plan of reorganization (the "Trustee Plan") which is similar in many respects to the Prior Plan but with material differences. In the Trustee Plan, the Trustee proposes to sell substantially all assets of the business, including the Debtors' reversionary interest in the Escrow Accounts, by either (i) a sale of all such assets to one buyer, as proposed herein, (ii) a sale of the Escrow Accounts to one buyer and a sale of the remaining business assets to a second buyer as a going concern, or (iii) a sale of the Escrow Accounts to one buyer and retention of the business as a going concern by the Reorganized Debtors.

5      In order to implement this approach, it will be necessary for the Trustee to file a number of related motions, as well as an amended disclosure statement for the Trustee Plan, including but not limited to (i) a motion to approve a sale procedure with an opportunity for bids, an auction if qualifying bids are received, and a hearing to consider confirmation of the sale, (ii) a motion to authorize the Trustee to enter into separate leases with respect to the two tracts of real property occupied for the business operations, either or both of which leases may then be assigned to a buyer if so desired, and (iii) a motion to authorize the Trustee to enter into a lease with PTM Technologies, Inc., with respect to the equipment used in the business operation, which lease may then be assigned to a buyer if so desired.

6      If the proposed asset sale is not approved by the Court, fails to close, or is approved and closes only as to some but not all of the assets, the Trustee Plan will provide for distribution of such sale proceeds as may be obtained and for further distributions from future revenues as the reorganized business may be able to provide. The expectation of the Trustee is that the asset sale will generate sufficient proceeds to cure any arrearage in the Escrow Deposits required under applicable statutes of the Settling States in which the Debtor has sold certain tobacco products, pay the secured claim held by the Bank of the Carolinas, and provide additional funds for payment of allowed costs of administration and for partial payment of general unsecured claims.

7      The Trustee believes that the proposed asset sale will likely result in distributions which are in the best interest of creditors both as to timing and amount, the asset sale would resolve a number of regulatory issues that would be more difficult to address in the context of a traditional restructuring over an extended period of time, and that all parties in interest would benefit from the proposed sale to the Buyer, who would then be in position to infuse working capital, make

the necessary capital expenditures, and maintain operations for existing and prospective customers, vendors and employees.

**Sale Motion**

8     The Trustee has entered into an Asset Purchase Agreement (attached as **Exhibit A**) with CB Holdings, LLC ("CB"), subject to approval by the Court, pursuant to which the Trustee has agreed to sell and CB has agreed to purchase substantially all of the Debtors' tangible and intangible personal property, excluding certain assets which are to be retained for the benefit of the estate, under a mutually acceptable sale process which provides for the submission of higher and better bids, an auction, and approval by the Court after notice and hearing.

9     The Asset Purchase Agreement also provides for certain executory contracts or leases to be assumed and assigned to CB at closing; provided however, CB shall have the option to (i) renegotiate any or all of such proposed leases, or (ii) reject the proposed leases and decline to lease any or all of the Leased Assets and proceed with Closing, in which event the Leased Assets under the rejected leases shall be excluded from this transaction.

10    The Asset Purchase Agreement values the Assets, assuming a Closing on or about October 31, 2011, at approximately $16,092,000 in the aggregate, as follows:

   a.   Total Escrow Value, 23% of approximately $50,400,000, or $11,592,000.
      i.   23% of funds on deposit at closing. Existing Escrow Deposits are estimated to be approximately $41,900,000 at closing.
      ii.  23% of funds to be deposited at closing from purchase price to cure the Delinquent Amount. This estimated at $7,500,000 plus approximately $1,000,000 for the disputed claim by Missouri, for a total of approximately $8,500,000.
   b.   Accounts Receivable Amount, to be collected by Buyer for Seller's benefit, approximately $1,100,000.
   c.   Inventory Amount, limited to useable inventory, approximately $2,000,000.
   d.   All other assets, $1,400,000.

11    In this motion (the "Sale Motion"), the Trustee seeks approval of the sale of such assets (the "Sale Assets") to CB or to any party who submits a higher and better bid (the "Buyer") in accordance with the terms and conditions set forth in the Asset Purchase Agreement, free and clear of all claims, liens encumbrances and interests.

12    The Sale Assets do not include certain assets (the "Excluded Assets") as more particularly set forth in the Asset Purchase Agreement and generally described as (i) any cash, cash equivalents, bank deposits, funds in transit and tax refunds, (ii) any cause of action which are pending or may be brought by or on behalf of one or more of the Debtors, including those which may be brought by the Trustee pursuant to Chapter 5 of the Bankruptcy Code in connection with this bankruptcy case, and (iii) corporate records and shares of capital stock of each Debtor held in treasury subject to certain provisions set forth in the Asset Purchase Agreement.

13    In addition, the Trustee will file separate motions in conjunction with this Sale Motion, seeking (i) authority to enter into certain real estate and equipment leases related to the business operations, and (ii) authority for the assumption and assignment of these and other leases or executory contracts as may be specifically identified by the Buyer in advance of the Closing (collectively, the "Assumed Agreements"); provided however, the Buyer will have the option to (i) renegotiate any or all of such proposed leases, or (ii) reject the proposed leases and decline to lease any or all of the Leased Assets and proceed with Closing, in which event the Leased Assets under the rejected leases shall be excluded from this transaction.

14    The Trustee proposes that the sale be conducted pursuant to the bidding procedures order in the form attached hereto as **Exhibit B** (the "Bidding Procedures Order"), and that the Sale Assets will be transferred to the Buyer at closing free of all claims, liens encumbrances and interests pursuant to Section 363(f) of the Bankruptcy Code. The Trustee requests that the Order approving the sale (the "Sale Approval Order") (i) approve the sale and transfer of the Sale Assets to the Buyer, (ii) transfer any and all claims, liens, encumbrances or interests in or upon the Sale Assets to the proceeds of sale, (iii) approve the assumption and assignment of the Assumed Agreements, and (iv) in the event of an auction and resulting sale at an increased purchase price, and under certain circumstances as set forth in the Bidding Procedures, approve the payment or credit for a break-up fee in the amount of $250,000 (the "Break-up Fee") to CB.

15    Upon approval of the Bidding Procedures as provided below, CB will furnish a deposit of $250,000 to be held in escrow to secure its obligations under the Asset Purchase Agreement. Any party submitting a Bid will be required to furnish a deposit of $350,000, representing coverage of the proposed Break-up Fee plus $100,000.

16    The Trustee seeks authority to consummate an asset sale promptly for the benefit of creditors, and in that regard proposes the following schedule for the Court's consideration:

  a.  August 16, 2011:    Initial hearing and entry of Bidding Procedures Order.
  b.  September 15, 2011: End of Study Period for CB.
  c.  September 30, 2011: Deadline to submit Qualifying Bid(s).
  d.  September 30, 2011: Deadline to submit Statement of Defaults.
  e.  October 4, 2011:    Auction, if Qualifying Bid(s) received.
  f.  October 5, 2011:    Report of Auction.
  g.  October 7, 2011:    Deadline to file Objection.
  h.  October 12, 2011:   Sale Approval Hearing.
  i.  October 14, 2011:   Entry of Sale Approval Order.
  j.  October 31, 2011:   Closing.

17    The Trustee seeks approval of the Bidding Procedures in advance of the bid process, and in order to consummate the proposed transaction and thereby preserve value for the estate, the Trustee requests that the Court schedule and conduct an initial hearing to:

  a. Enter the "Bidding Procedures Order" substantially in the form attached hereto as **Exhibit B** (i) approving the Bidding Procedures, including a Break-up Fee, (ii) approving the Notice of Sale (the "Notice") attached hereto as **Exhibit C**, (iii) making the Notice Finding (as defined below), (iv) setting a deadline for any objection to the proposed sale, and (v) scheduling a second hearing (the "Sale Approval Hearing") to hear all other aspects of the Sale Motion and to consider confirmation of the sale to the Buyer (as defined in the Sale Procedures).

  b. Find (the "Notice Finding") that adequate notice of the proposed public sale of the Sale Assets shall consist of providing copies by regular mail or electronic service of (1) the Notice to all creditors and other parties in interest, and (2) the Bidding Procedures Order to:

    i.   The Bankruptcy Administrator.
    ii.  Any creditors asserting a lien upon any or all of the Sale Assets.
    iii. Any party who has filed a notice of appearance and request for copies of any notices or pleadings filed in this bankruptcy case.

c. The Trustee will also provide copies of the Bidding Procedures Order and the Notice to all entities who submit to the Trustee or to his counsel an expression of interest in purchasing the Sale Assets and written request for relevant materials, although the service of same is not required by the Bankruptcy Code or Rules.

18 The Trustee requests that the Court require that objections, if any, to the relief requested in this Sale Motion (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules of this Court, (c) be filed with the Court and delivered to the following parties (the "Limited Notice Parties") by October 7, 2011 or at least three (3) business days prior to the date selected by the Court for the Sale Approval Hearing:

a. Michael D. West, Bankruptcy Administrator, 101 S. Edgeworth St., PO Box 1828, Greensboro, NC 27402

b. John A. Northen, special counsel for the Trustee, Northen Blue, LLP, 1414 Raleigh Rd., Ste 435, PO Box 2208, Chapel Hill, NC 27515-2208.

c. RJ Lackey, counsel for CB Holdings, LLC, Woods Rogers PLC, 341 Main St., Ste 302, Danville, VA 24541.

d. Richard Maxwell, counsel for CB Holdings, LLC, Woods Rogers PLC, PO Box 14125, Roanoke, VA 24038-4125.

e. Gregory B. Crampton, counsel for the Settling States, Nicholls & Crampton PA, 3700 Glenwood Ave, Ste 500, PO Box 18237, Raleigh, NC 27619-8237.

f. Patricia Molteni, counsel for the Settling States, National Association of Attorneys General, 2030 M Street NW, 8th Floor, Washington, DC 20036.

g. Paul A. Fanning, counsel for Bank of the Carolinas, Ward and Smith, PA, P O Box 8088, Greenville, NC 27835-8088.

h. Charles M. Ivey, III, counsel for PTM Technologies, Inc., Ivey McClellan Gatton & Talcott, LLP, P O Box 3324, Greensboro, NC 27402

WHEREFORE, the Trustee prays the Court for the following relief:

1 After notice and hearing, entry of a Bidding Procedures Order substantially in the form attached hereto as **Exhibit B** (i) approving the Bidding Procedures, including but not limited to approval of the Break-up Fee, (ii) approving the Notice of Sale attached hereto as **Exhibit C**, (iii) making the Notice Finding, (iv) setting a deadline for any objections to the proposed sale, and (v)

setting a date for the Sale Approval Hearing to hear all other aspects of the Sale Motion and to consider confirmation of the sale to the Buyer.

2       Upon conclusion of the Sale Approval Hearing, and after consideration of any competing bids, entry of the Sale Approval Order (a) designating the Buyer (as defined in the Bidding Procedures), (b) authorizing the sale of all or any portion of the Sale Assets to the Buyer, as specified in the Buyer's highest and best bid, free and clear of any and all claims, liens, encumbrances and interests, (c) finding that the Buyer is a "good faith buyer" pursuant to Section 363(m) of the Bankruptcy Code, and that none of the grounds set forth in Section 363(n) exist with respect to a sale to the Buyer, (d) finding that one or more of the grounds for a sale free and clear pursuant to Section 363(f) of the Bankruptcy Code has been met as to each claim, lien, encumbrance or interest in any or all of the Sale Assets, and transferring any and all claims, liens, encumbrances and interests in or upon the Sale Assets to the proceeds of the sale, (e) authorizing the Trustee to assume and/or assign the Assumed Agreements, (f) designating a Back-up Bid, and authorizing a sale on the terms of the Back-up Bid in the event the Buyer fails or refuses to timely close the transaction, (g) authorizing retention of the Excluded Assets and any other assets which are not deemed to be Sale Assets in the Buyer's final bid, (h) authorizing the payment of closing costs, including the Break-up Fee where applicable, and (i) providing such other relief as the Trustee shall reasonably request.

Respectfully submitted on this the 19th day of July, 2011.

/s/ John A. Northen

**Special Counsel for the Trustee:**
Northen Blue, LLP
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
Stephanie Osborne-Rodgers, NCSB #29374
sor@nbfirm.com
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441