UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| IN THE MATTER OF: | |
|---|---|
| Renegade Holdings, Inc., et al | Case No. 09-50140<br>Chapter 11<br>Consolidated for Administration |
| Debtors | |
| **Order To Establish Bidding Procedures And Approve Break-up Fee, Approve Form And Manner Of Notice Of Sale, And Schedule Hearing To Confirm Sale** | |

This matter came before the Court to consider the motion for an order authorizing the Sale and granting related relief (the "Sale Motion") filed by Peter Tourtellot (the "Trustee") on behalf of Renegade Holdings, Inc. ("RHI"), Alternative Brands, Inc. ("ABI") and Renegade Tobacco Co. ("RTC" and collectively, the "Debtors"), pursuant to §§ 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9006 of the Federal Rules of Bankruptcy Procedure. After considering the matters set forth in the Sale Motion, the evidence presented or proffered without objection, and the comments of parties in interest, it is hereby ORDERED as follows:

The final hearing to grant the Sale Motion and approve the Sale (the "Sale Approval Hearing") shall be held before this Court in Court in Courtroom #1, 101 S. Edgeworth Street, Greensboro, North Carolina at 9:30 a.m. on October 12, 2011.

The "Break-up Fee" as provided in the Bidding Procedures is expressly approved and authorized, the notice contemplated by the Sale Motion is adequate and sufficient notice of the proposed sale and no additional notice need be given, and the bidding procedures set forth below (the "Bidding Procedures") are hereby approved.



# BIDDING PROCEDURES

## Renegade Holdings, Inc., Alternative Brands, Inc. and Renegade Tobacco Co.

1. <u>Diligence by Prospective Bidders</u>. The Trustee shall give notice of the proposed Sale and these Bidding Procedures to prospective bidders as required by the Bidding Procedures Order, receive and consider unsolicited offers for the Sale Assets, provide information to any such prospective bidder, and allow any such prospective bidder to conduct due diligence in connection with consideration of a potential bid for the Sale Assets; provided, however, that any such prospective bidder desiring to conduct due diligence shall (a) demonstrate the financial ability to consummate a transaction for the purchase of the Sale Assets, and (b) execute a confidentiality agreement in a form acceptable to the Trustee.

2. <u>Contracts and Leases; Alleged Defaults</u>. Any allegation that defaults exist or must be cured as a condition to the assumption and assignment of any of the executory contracts or leases which may be assumed and/or assigned to the Buyer, which allegation shall include a precise statement of the nature and amounts of such alleged defaults (a "Statement of Defaults"), must be served upon John Northen, Northen Blue, LLC, 1414 Raleigh Rd., Suite 435, Chapel Hill, NC 27517 ("Trustee's Counsel") in a manner such that the Statement of Defaults is actually received by said counsel by <u>September 30, 2011</u> (the "Statement of Defaults Deadline").

3. <u>Bid Deadline</u>. Any competing "Bid" (as described below) must be served upon Trustee's Counsel in a manner such that the bid is actually received by <u>September 30, 2011</u> (the "Bid Deadline").

4. <u>Bid Requirements</u>. Any entity (other than CB Holdings, LLC) that is interested in purchasing the Sale Assets (a "Bidder") must submit to Trustee's Counsel a "Bid" in conformance with this paragraph, in a manner such that the Bid is received no later than the Bid Deadline. Every such Bid must:

   a. include (i) an executed copy of a definitive sale agreement, including schedules, and (ii) a version of the Bidder's definitive sale document and schedules redlined or otherwise marked to show any and all deviations from the Agreement;

   b. contain terms and conditions no less favorable to the Debtors than the terms and conditions of the Agreement;

   c. provide for cash consideration to Debtor of at least $350,000 more than the cash consideration to be provided by the Buyer ($100,000 more after taking into account the Break-up Fee);

   d. not contain any contingencies to the validity, effectiveness, and/or binding nature of the offer, including, without limitation, contingencies for financing, due diligence or inspection except for the conditions to closing provided for in the Agreement

Sale motion Exh B- bidding procedures order 2011.07.18    2
Case 09-50140    Doc 972-2    Filed 07/20/11    Page 2 of 6

e.  be accompanied by admissible evidence, in the form of affidavits or declarations establishing the Bidder's good faith, within the meaning of section 363(m) of the Bankruptcy Code, and its "adequate assurance of future performance" with respect to the Assumed Agreements, within the meaning of section 365(f)(2)(B) of the Bankruptcy Code;

f.  be accompanied by (i) financial statements or admissible evidence in the form of affidavits or declarations establishing that the Bidder is ready, willing, authorized, capable, and qualified, financially, legally, and otherwise, of unconditionally performing all obligations under the Agreement (or its equivalent) in the event that it submits the prevailing bid at the Sale Approval Hearing, and (ii) evidence that it is duly authorized and entitled to engage in the transaction contemplated by the Bid without the consent of any entity that has not been obtained;

g.  be accompanied by a deposit in the sum of $350,000 (the "Deposit Amount") in the form of a wire transfer or bank check payable to Trustee's Counsel and to be held in a non-interest bearing trust account pending completion of the Auction; and

h.  include a commitment to close and consummate the Sale promptly following entry of the Sale Approval Order, assuming no stay thereof, no later than October 31, 2011 unless extended in accordance with the terms of the Asset Purchase Agreement.

5. <u>Non-Conforming Bids Disqualified from Auction</u>. Any entity that fails to submit a timely, conforming Bid, as set forth above, as determined by the Trustee in his reasonable discretion, shall be disqualified from bidding for any of the Sale Assets at the Auction, and in such event the Trustee shall file with the Court on or before the Auction Date a statement explaining the grounds for disqualification ("Statement of Disqualification").

6. <u>No Conforming Bids</u>. If no timely, conforming Bids are submitted, the Trustee shall request at the Sale Approval Hearing that the Court approve the proposed sale of the Sale Assets to CB Holdings, LLC ("CB"). Any party in interest may contest the Trustee's determination as to whether a Bid is conforming, but any such contest must be in writing and served upon Trustee's Counsel and filed with the Bankruptcy Court, in a manner such that contest is actually received by said counsel and the Bankruptcy Court at least one (1) business day in advance of the Sale Approval Hearing.

7. <u>Auction</u>. In the event that one or more timely, conforming Bids are submitted (CB and each person who has submitted such a timely, conforming Bid shall be referred to herein as a "Qualified Bidder"), the Trustee shall conduct the Auction, in which all Qualified Bidders may participate. The Auction shall be held on <u>October 4, 2011</u>, commencing at 9:00 o'clock a.m. Eastern, in the offices of John Northen, Northen Blue, LLC, 1414 Raleigh Rd., Suite 435, Chapel Hill, NC 27517 (or such other location as may be determined by Trustee's Counsel and communicated to all Qualified Bidders at least three (3) business days before the Auction), and shall be governed by the following procedures:

a. all Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction and/or the sale of the Sale Assets;

b. bidding will commence at an amount of the highest or otherwise best conforming Bid submitted by a Qualified Bidder, as determined by the Trustee in his sole discretion;

c. each subsequent bid by a Qualified Bidder shall be in increments of at least $50,000 in aggregate consideration above the previous bid after taking into account the Break-up Fee;

d. each Qualified Bidder should be prepared to make its best and final offer at the Auction, and the Trustee reserves all rights to object to and oppose any request for a continuance or recess of the Auction or the Sale Approval Hearing;

e. if, upon the conclusion of the Auction, and consistent with the terms of these bidding procedures, CB has failed to make a bid that the Trustee determines, in his reasonable discretion, to be the highest or otherwise best bid, after taking into consideration the Break-up Fee, the Trustee will recommend that the Bankruptcy Court authorize and approve a sale of the Sale Assets (including an assumption and assignment of the Assumed Agreements) to the prevailing Qualified Bidder;

f. if, however, CB makes a bid that the Trustee determines, in his reasonable discretion, and consistent with the terms of these Bidding Procedures, to be the highest or otherwise best bid compared to any bid by any other Qualified Bidder, after taking into consideration the Break-up Fee, the Trustee will recommend that the Bankruptcy Court approve the Agreement and authorize Debtor to sell the Sale Assets (including assumption and assignment of the Assumed Agreements) to CB; and

g. upon conclusion of the Auction, the Trustee shall designate the Qualified Bidder submitting the highest or otherwise best bid as the prevailing bidder (the "Prevailing Bidder"). Any objection to the Trustee's designation of the Prevailing Bidder shall be raised at the Sale Approval Hearing and decided by the Bankruptcy Court.

8. <u>Objection</u>. Any objection (an "Objection") to the Sale Motion, including any objection to the assumption and/or assignment of any of the Assumed Agreements, must be filed with the Bankruptcy Court and served on the following parties (the "Limited Notice Parties"), in a manner such that the Objection is actually received by <u>October 7, 2011</u> (the "Objection Deadline").

a. Michael D. West, Bankruptcy Administrator, 101 S. Edgeworth St., PO Box 1828, Greensboro, NC 27402

b. John A. Northen, special counsel for the Trustee, Northen Blue, LLP, 1414 Raleigh Rd., Ste 435, PO Box 2208, Chapel Hill, NC 27515-2208.

Sale motion Exh B- bidding procedures order 2011.07.18     4
Case 09-50140    Doc 972-2    Filed 07/20/11    Page 4 of 6

c. RJ Lackey, counsel for CB Holdings, LLC, Woods Rogers PLC, 341 Main St., Ste 302, Danville, VA 24541.

d. Richard Maxwell, counsel for CB Holdings, LLC, Woods Rogers PLC, PO Box 14125, Roanoke, VA 24038-4125.

e. Gregory B. Crampton, counsel for the Settling States, Nicholls & Crampton PA, 3700 Glenwood Ave, Ste 500, PO Box 18237, Raleigh, NC 27619-8237.

f. Patricia Molteni, counsel for the Settling States, National Association of Attorneys General, 2030 M Street NW, 8th Floor, Washington, DC 20036.

g. Paul A. Fanning, counsel for Bank of the Carolinas, Ward and Smith, PA, P O Box 8088, Greenville, NC 27835-8088.

h. Charles M. Ivey, III, counsel for PTM Technologies, Inc., Ivey McClellan Gatton & Talcott, LLP, P O Box 3324, Greensboro, NC 27402

9. **Presumed Consent to Assumption and/or Assignment of Assumed Agreements.** Any entity that fails to file a timely Objection or Statement of Defaults by the applicable Deadline shall be deemed to have consented to the relief sought in the Sale Motion.

10. **Sale Approval Hearing.** The final hearing to approve the Prevailing Bidder (the "Sale Approval Hearing") shall be held before the Bankruptcy Court in Courtroom #1, 101 S. Edgeworth Street, Greensboro, North Carolina at 9:30 a.m. on October 12, 2011.

11. **Business Judgment.**

a. The Trustee (i) may exercise his business judgment to recommend a sale of the Sale Assets (including assumption and assignment of the Assumed Agreements) to any Qualified Bidder whose bid the Trustee determines, in his reasonable discretion, to be in the best interests of the bankruptcy estate; (ii) shall consult with the secured creditors and any other significant constituent in connection with the bidding process and the selection of the highest or otherwise best bid; and (iii) may reject, at any time before the entry of an order of the Bankruptcy Court approving a bid from a Qualified Bidder, any bid that, in the Trustee's sole discretion, is (i) inadequate or insufficient, (ii) not in substantial conformity with the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the Sale Motion, or (iii) contrary to the best interests of the Debtors' estate and its creditors.

b. In exercising business judgment as to which Bid constitutes the highest or otherwise best Bid, the Trustee may consider all factors which he deems relevant, including but not limited to, the terms and conditions of the proposed purchase agreement, the Bidder's ability to close the proposed transaction without delay, the scope of the proposed transaction, the form and market value of any non-cash consideration offered, the aggregate value of any assets not included in such Bid and the Debtors' ability to recognize such value, and the costs to the estate of any Bid.

12. <u>Break-up Fee</u>. Solely in the event that the Bankruptcy Court enters an order approving the sale of the Sale Assets to an entity other than CB, CB has not committed a material default under the Agreement, and the Trustee does not sell the Sale Assets to CB, the Debtors shall pay CB a break-up fee of $250,000 (the "Break-up Fee") which will compensate CB for the lost opportunity cost and the value it brought to the Debtors and the estate in the form of the Asset Purchase Agreement to serve as a "stalking horse offer" for other bids and to reimburse CB for the time and effort expended and the expenses incurred in connection therewith (including, without limitation, legal and consulting fees and costs). If earned pursuant to these Bidding Procedures, the Break-up Fee shall be payable to CB within ten days after closing of the sale of the Sale Assets to an entity other than CB.

13. <u>Back-up Bidder</u>. Upon the conclusion of the Auction, the Trustee may designate the Bidder submitting the next highest or otherwise best bid after the Prevailing Bidder to serve as the "Back-up Bidder," <u>provided, however</u>, that CB shall be bound by its bid only until the Bankruptcy Court has entered an order approving the sale to the Prevailing Bidder unless CB agrees in writing to act as the Back-up Bidder. Any objection to the Trustee's designation of the Back-up Bidder shall be raised at the Sale Approval Hearing and decided by the Bankruptcy Court. If, for any reason, the Prevailing Bidder is unable or unwilling timely to perform its obligations under the Prevailing Bidder's definitive sale agreement, the Trustee may in the exercise of his business judgment sell the Sale Assets to the Back-up Bidder without further notice or a hearing. The Back-up Bidder's bid shall remain open and binding until closing of the sale to the Prevailing Bidder or, if the Prevailing Bidder is unable or unwilling to close and Debtor elects to sell to the Back-up Bidder, until the sale to the Back-up Bidder closes.

14. <u>Disposition of Deposits</u>. Promptly following the Bankruptcy Court's determination of the Prevailing Bidder, the deposits submitted by CB and any Bidders shall be refunded to each unsuccessful bidder other than the Back-up Bidder, if any. The deposit of the Prevailing Bidder and the Back-up Bidder shall be retained as earnest money to be used in the following ways:

    a.     the deposit of the Prevailing Bidder shall either be (i) applied at closing as a credit toward the purchase price of the Prevailing Bidder or, if the purchase price is paid in full at closing, returned to the Prevailing Bidder, (ii) if the sale to the Prevailing Bidder shall fail to timely close by reason of a breach or default of the Prevailing Bidder, the deposit shall be retained by the Trustee as liquidated damages, or (iii) in the event that the sale to the Prevailing Bidder shall fail to timely close by reason of a breach or default of the Debtors, the deposit shall be returned to the Prevailing Bidder; and

    b.     the deposit of the Back-up Bidder shall either be (i) returned to the Back-up Bidder upon the closing of the transaction with the Prevailing Bidder, or (ii) if the sale to the Prevailing Bidder shall fail to close for any reason, applied at closing as a credit toward the purchase price of the Back-up Bidder, or (iii) if the sale to the Back-up Bidder shall fail to timely close by reason of a breach or default of the Back-up Bidder, retained by the Trustee as liquidated damages.