UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE:                               )
                                     )
Renegade Holdings, Inc.,             )   Case No. 09-50140C-11W
Alternative Brands, Inc.,            )   Case No. 09-50141C-11W
Renegade Tobacco Co.,                )   Case No. 09-50143C-11W
                                     )   Consolidated for Administration
         Debtors.                    )
                                     )

## MEMORANDUM OPINION

These cases came before the court on June 28, 2011, for hearing on a motion by PTM Technologies, Inc. ("Motion") to be allowed to file a claim after the expiration of the deadline for filing claims in these cases. Having considered the Motion, the objections to the Motion and the arguments of counsel, the court finds and concludes as follows:

## FACTS

These cases were commenced on January 28, 2009, and are being jointly administered pursuant to an order entered on February 11, 2009. The deadline for filing proofs of claim in these cases was May 25, 2009, for all creditors other than governmental units.

PTM Technologies, Inc. ("PTM") is a wholly-owned subsidiary of Renegade Holdings, Inc. ("RHI") and an affiliate of Alternative Brands, Inc. ("ABI") and Renegade Tobacco Company ("RTC"), who also are wholly-owned subsidiaries of Renegade Holdings, Inc. In May of 2010, twelve months after these cases were commenced, PTM commenced its own Chapter 11 case (Case No. 10-50980) and is a debtor in possession in that case.

When these cases were commenced in January of 2009, ABI was leasing certain equipment from PTM for use in manufacturing tobacco products. According to the Motion, ABI was indebted to PTM at that time in the amount of $3,069,809 and RHI was indebted to PTM in the amount of $1,774,056.45 for "Insider loan/Svc. Rendered" and the Motion seeks authorization to file proofs of claim for those amounts in these cases.

Although PTM had actual knowledge of these cases and the deadline for filing proofs of claim, no proof of claim was filed by PTM prior to the expiration of the deadline on May 25, 2009. The Motion reflects that not filing a proof of claim was the result of a conscious and deliberate decision on the part of PTM. Motion, p. 2 (PTM "elected not to file any proof of claim"). As to the reason for not filing a claim, the Motion states that since "all Plans contemplated a 100% payment to creditors no action to pursue the same was being contemplated. . . ." Motion, p. 2. However, no proposed plans of reorganization had been filed in these cases or in the PTM case when the claims deadline expired on May 25, 2009. Nonetheless, PTM "elected" not to file a proof of claim.

The 100% dividend "contemplated" by PTM has not materialized. Although a joint plan of reorganization providing for a 100% dividend subsequently was confirmed in these cases in April of 2010, the confirmation of that plan has been vacated and the dividend that creditors ultimately will receive in these cases and

in the PTM case is uncertain. PTM argues that relief should be granted under Rule 9006 as a result of this change in circumstances.

ANALYSIS

In arguing that the time for filing proofs of claim should be enlarged, PTM relies upon Bankruptcy Rule 9006(b)(1), which provides as follows:

> IN GENERAL. Except as provided in paragraph (2) and paragraph (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Where, as in the present case, the request for relief under Bankruptcy 9006(b)(1) is made after the expiration of the specified period, the movant is entitled to relief if the failure to act was the result of excusable neglect. The standard for determining whether "excusable neglect" exists is found in <u>Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership</u>, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).

In <u>Pioneer</u>, the Supreme Court established a two-prong test for determining whether to extend the time to file an untimely proof of

claim based upon excusable neglect. First, the court must determine whether the movant's failure to act constitutes neglect. In addressing the meaning that should be given to neglect, the Court first reviewed the range of possible explanations for a party's failure to comply with a filing deadline, stating:

> At one end of the spectrum, a party may be prevented from complying by forces beyond its control, such as an act of God or unforeseeable human intervention. At the other, a party simply may <u>choose</u> to flout a deadline. In between lie cases where a party may choose to miss a deadline although for a very good reason, such as to render first aid to an accident victim discovered on the way to the courthouse, as well as cases where a party misses a deadline through inadvertence, miscalculation, or negligence.

507 U.S. at 387-88, 113 S. Ct. at 1494. [Emphasis by the Court].

In defining neglect for purposes of Rule 9006, the Court settled on conduct falling between the two extremes of the spectrum described by the Court, stating:

> Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as intervening circumstances beyond the party's control.

<u>Id.</u> at 388, 113 S. Ct. at 1495.

As to the second prong, <u>i.e.</u>, whether conduct constituting neglect is excusable, the Court stated in <u>Pioneer</u> that the determination of when neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances

surrounding the party's omission." Id. at 395, 113 S. Ct. at 1498. The court stated that the following factors should be included in the inquiry: (a) the danger of prejudice to the debtor; (b) the length of the delay and its potential impact on judicial proceedings; (c) the reason for the delay, including whether it was within the reasonable control of the movant; and (d) whether the movant acted in good faith.

A creditor seeking to extend the bar date pursuant to Bankruptcy Rule 9006 bears the burden of proving excusable neglect by a preponderance of the evidence. See In the Matter of Bulic, 997 F.2d 299, 302 (7th Cir. 1993); In re Houbigant, Inc., 188 B.R. 347, 354 (Bankr. S.D.N.Y. 1995); In re Dartmoor Homes, Inc., 175 B.R. 659, 665 (Bankr. N.D. Ill. 1994); In re Speciality Equipment Companies, Inc., 159 B.R. 236, 239 (Bankr. N.D. Ill. 1993). This means that PTM had the burden of showing by a preponderance of the evidence that its failure to file a timely proof of claim was the result of neglect and that any such neglect is excusable under the equitable criteria described in Pioneer. PTM failed to carry this burden.

As to whether there was neglect for purposes of Rule 9006, PTM has acknowledged in the Motion that it knowingly chose not to file a proof of claim before the claims deadline. It appears that this deliberate decision occurred because PTM believed that there was no need to file a claim in order for its creditors to be paid 100% of

their claims, and simply chose not to do so. Because not filing a claim was a conscious and deliberate decision by PTM, the court concludes that PTM's failure to file a claim does not constitute neglect under Rule 9006(b)(1). This conclusion comports with the decisions of other courts confronted with a failure to act under similar circumstances. See In re Banco Latino International, 310 B.R. 780, 785 (S.D. Fla. 2004)(deliberate decision not to file a timely indemnification claim was not the result of neglect and hence no relief available under Rule 9006); In re Anicom, Inc., 273 B.R. 756, 762-63 (Bankr. N.D. Ill. 2002)(failure to obtain prior approval of expert's employment was not the result of neglect where counsel had made deliberate choice to withdraw an earlier application); In re Lan Associates XIV, L.P., 193 B.R. 730, 737-38 (Bankr. D.N.J. 1996)(deliberate decision not to file a claim because of unlikely prospect of a dividend did not constitute neglect under Rule 9006); Agribank v. Green, 188 B.R. 982, 988-89 (C.D. Ill. 1995)(failure to file a timely claim as a result of a deliberate decision to delay filing a claim until after a foreclosure was completed was not neglect under Rule 9006); In re Biocoastal Corp., 176 B.R. 966, 971 (Bankr. M.D. Fla. 1994)(conscious business decision not to file a claim because of assumption that there would be little or no dividend was not neglect under Rule 9006).

There may be situations in which a late filing that was

deliberate might be excused under Rule 9006, such as the situation described in <u>Pioneer</u> in which a party chooses to miss a deadline for the "very good reason" that he chooses to render first aid to an accident victim encountered on the way to the courthouse. 507 U.S. at 388, 113 S.Ct. 1489. However, as pointed out in the <u>Anicom</u> decision, where deadlines are missed as a result of conscious and deliberate decisions, the reasons rarely are "very good" ones, as in the <u>Pioneer</u> example, but instead, usually are calculated and strategic decisions based on honest but unsound business judgment. 273 B.R. at 763. Such is the case here with respect to PTM's conscious and deliberate decision not to file a claim in these cases. The fact that the prospects for the Debtors and PTM may have changed and that the decision not to file a claim may have turned out wrong, does not alter the fact that the decision not to file was a calculated and strategic decision. Such decisions do not constitute neglect under Rule 9006 and are not grounds for relief under that rule. The Motion, therefore, shall be denied. An order so providing is being entered contemporaneously with the filing of this memorandum opinion.

    This 19th day of August, 2011.

                                      /s/ William L. Stocks
                                      WILLIAM L. STOCKS
                                      United States Bankruptcy Judge

PARTIES IN INTEREST

John A. Northen, Esq.
P.O. Box 2208
Chapel Hill, NC 27514-2208

Patricia A. Molteni
Natl. Assoc. Of Attorney Generals
2030 M Street, NW, 8th Floor
Washington, D.C. 20036

Richard L. Harrison
NC Department of Justice
P.O. Box 629
Raleigh, NC 27602

Ashley S. Rusher
P.O. Box 25008
Winston Salem, NC 27114-5008

Paul A. Fanning
Gary J. Rickner
P.O. Box 8088
Greenville, NC 27835-8088

Charles M. Ivey, III
100 S. Elm Street, Suite 500
Greensboro, NC 27401

Rebecca A. Leigh
301 S. Greene Street, Suite 201
Greensboro, NC 27401

Michael D. West, Bankruptcy Administrator