## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

| IN THE MATTER OF:<br><br>**Renegade Holdings, Inc., et al.,**<br><br>    **Debtors.** | **Case No. 09-50140**<br>**Consolidated for Administration**<br>**Chapter 11** |
|---|---|
| **Peter L. Tourtellot, Trustee for Renegade Holdings, Inc., Alternative Brands, Inc. and Renegade Tobacco Company,**<br>    **Plaintiff,**<br><br>**vs.**<br><br>**Steven M. Williams,**<br>    **Defendant.** | **AP No. 11-06001** |
| **PLAINTIFF'S MOTION FOR APPROVAL OF A**<br>**COMPROMISE AND SETTLEMENT** ||

Pursuant to Rule 9019 of the Federal rules of Bankruptcy Procedure, Plaintiff, by and through undersigned counsel, moves the Court for entry of an Order approving a compromise and settlement of all claims filed in this proceeding ("Adversary Proceeding") against Defendant, Steven M. Williams ("Defendant"). In support thereof, Plaintiff respectfully shows unto the Court as follows:

1.    On January 28, 2009 (the "Petition Date"), Renegade Holdings, Inc. ("RHI"), Alternative Brands, Inc. ("ABI"), and Renegade Tobacco Company ("RTC", and along with RHI and ABI collectively referred to as the "Debtors") filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code, and orders for relief were entered in each proceeding. The cases have been consolidated for purposes of administration only by order entered on February 11, 2009.

2.    From the Petition Date through August 18, 2010, the Debtors continued in possession of their respective assets and operated their businesses as debtors-in-possession. On August 18, 2010, the Court appointed Peter L. Tourtellot as Chapter 11 Trustee for the Debtors ("Trustee").

3.      The Debtors are fabricators and distributors of tobacco products consisting primarily of cigarettes and cigars.  RHI is the sole shareholder of ABI and RTC, and RHI, ABI and RTC each are North Carolina corporations.  RHI is a wholly-owned subsidiary of Compliant Tobacco Company, LLC ("Compliant"), a North Carolina limited liability company.  Calvin A. Phelps ("Phelps") is the sole manager and member of Compliant.

4.      As of the Petition Date, Phelps served as the chief executive officer for each of the Debtors.   Phelps resigned his position as an officer and director of the Debtors on June 25, 2010.

5.      On or about August 11, 2010, one week before the appointment of the Trustee, Phelps caused the Debtors to execute an Executive Employment Agreement and an Escrow Account Amendment and Assignment Agreement with Defendant (collectively, the "Agreements") which purported to outline the terms and conditions of Defendant's employment as President of each of the Debtors.  Phelps executed the Agreements as the "sole shareholder" of the Debtors.

6.      The Escrow Account Amendment and Assignment Agreement (the "Assignment") purports to assign to Defendant ten percent (10%) of the principal of the Escrow Account (as that term is defined in the Assignment) owned by the Debtors, along with accumulated interest thereon subject to certain restrictions as set forth in the Assignment (collectively, the "Transfer").

7.      After the Trustee was appointed on August 18, 2010, the Trustee terminated Defendant's purported employment with the Debtors.

8.      On February 10, 2011, a complaint was filed by the Trustee on behalf of the Debtors for: (i) determination as to the validity of the Agreements; (ii) avoidance of the Transfer pursuant to 11 U.S.C. §549 of the Bankruptcy Code; and (iii) recovery of the Transfer pursuant to 11 U.S.C. §550(a) of the Bankruptcy Code.

9.      After discussion and negotiation, the parties have agreed, subject to this Court's approval, to settle the claims in the Adversary Proceeding pursuant to the terms set forth in the Settlement Agreement and General Release attached hereto as Exhibit A ("Settlement Agreement").  Pursuant to the Settlement Agreement, the parties have agreed, among other things, that the Agreements, including the Transfer to Defendant thereunder, are void and of no effect.

2

10. The Trustee has thoroughly analyzed the proposed settlement as reflected in the Settlement Agreement, taking into consideration the strengths and weaknesses of the Trustee's claims and Defendant's defenses to such claims, the amount of the claims, the information and evidence available to pursue the claims through trial, and the costs of further negotiation and litigation.

11. Based on this thorough analysis, the Trustee believes that the Settlement Agreement is in the best interest of the estate and the creditors of the estate and requests that the Court approve the Settlement Agreement.

Wherefore, the Trustee respectfully prays the Court for entry of an Order approving of the Trustee's entry into the Settlement Agreement and granting the Trustee's Motion For Approval of a Compromise and Settlement.

RESPECTFULLY submitted this the 8th day of September, 2011.


/s/ <u>Vicki L. Parrott</u>

**Counsel for the Plaintiff/Trustee:**
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
NORTHEN BLUE, L.L.P.
Post Office Box 2208
1414 Raleigh Rd., Ste 435 (27517)
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441

3

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Renegade Holdings, Inc., et al.,** | ) | |
| | ) | **Case No. 09-50140** |
| | ) | **Consolidated for Administration** |
| Debtors. | ) | |
| | ) | |
| **Peter L. Tourtellot, Trustee for** | ) | |
| **Renegade Holdings, Inc., Alternative** | ) | |
| **Brands, Inc. and Renegade Tobacco** | ) | |
| **Company,** | ) | |
| | ) | **Adversary Proceeding No. 11-06011** |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **Steven M. Williams,** | ) | |
| | ) | |
| Defendant. | ) | |

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This settlement agreement (the "Settlement Agreement") by and between Peter L. Tourtellot, Trustee for Renegade Holdings, Inc., Alternative Brands, Inc. and Renegade Tobacco Company (the "Trustee" or "Plaintiff"), and Steven M. Williams (the "Defendant," and together with the Trustee, the "Parties"), sets forth the terms upon which the Parties have agreed to settle the matter described below.

## RECITALS

**WHEREAS,** on January 28, 2009 (the "Petition Date"), Renegade Holdings, Inc., Alternative Brands, Inc. and Renegade Tobacco Company (the "Debtors"), filed voluntary petitions for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of North Carolina (the "Court"); and

**EXHIBIT**

**A**

WHEREAS, on or about August 11, 2010, Calvin A. Phelps ("Phelps"), in his purported capacity as the sole shareholder of the Debtors, executed an Executive Employment Agreement and an Escrow Account Amendment and Assignment Agreement with Defendant (collectively, the "Agreements") which purported to outline the terms and conditions of Defendant's employment as President of each of the Debtors; and

WHEREAS, true and accurate copies of the Executive Employment Agreement and the Escrow Account Amendment and Assignment Agreement are attached hereto as <u>Exhibits A and B</u>, respectively; and

WHEREAS, the Escrow Account Amendment and Assignment Agreement (the "Assignment") purports to assign to Defendant ten percent (10%) of the principal of the Escrow Account (as that term is defined in the Assignment) owned by the Debtors, along with accumulated interest thereon subject to certain restrictions as set forth in the Assignment (collectively, the "Transfer"); and

WHEREAS, at the time of the execution of the Agreements by Phelps, Phelps did not have the authority or the capacity to bind the Debtors pursuant to the Agreements; and

WHEREAS, the Agreements were not executed by the Escrow Agent named therein, Suntrust Bank, and

WHEREAS, the Transfer was not authorized by the Debtors, the Court or any provision of the Bankruptcy Code; and

WHEREAS, on August 18, 2010, the Court appointed Peter L. Tourtellot as Chapter 11 Trustee for the Debtors ("Trustee"), and the Trustee immediately terminated the purported relationship between Defendant and the Debtors; and

**WHEREAS,** on February 10, 2011, the Trustee commenced the within adversary proceeding (the "Adversary Proceeding") against Defendant for: (i) determination as to the validity of the Agreements: (ii) avoidance of the Transfer pursuant to 11 U.S.C. §549 of the Bankruptcy Code: and (iii) recovery of the Transfer pursuant to 11 U.S.C. §550(a) of the Bankruptcy Code: and

**WHEREAS,** on April 13, 2011, the Defendant filed an answer requesting that the Adversary Proceeding be dismissed; and

**WHEREAS,** the Parties have engaged in negotiations which have resulted in a proposed settlement of the Adversary Proceeding.

**NOW, THEREFORE,** in consideration of the promises and mutual covenants contained herein and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is stipulated and agreed by and between the Parties, as follows:

1.      The recitals set forth above are incorporated herein by reference.

2.      The Parties agree that the Agreements. including without limitation. the Assignment and the Transfer to Defendant thereunder. are void and of no effect. The parties further agree that any other agreements purporting to transfer to Defendant any ownership interest in the Escrow Account or any other property of the Debtors' estates are likewise void and of no effect. Defendant hereby acknowledges that he has no ownership interest in, and will make no claim against. any property of the Debtors' estates. including without limitation. any principal. interest, gains. profits or other income comprising or derived from the Escrow Account. Further, any and all interest Defendant may have acquired in the Escrow Account or any other property of the Debtors' estates pursuant to the Agreements or otherwise is hereby transferred and assigned to the Trustee.

3.    The Defendant represents and warrants that he has not transferred or attempted to transfer any interest that he may have received in the Escrow Account or any other property of the Debtors' estates pursuant to the Agreements to any third party, and that he will indemnify and hold harmless the Trustee, the Debtors' estates, and their respective successors and assigns from any and all claims, damages, actions, suits, causes of action, rights, liens, demands, obligations and/or liabilities of any kind arising out of a breach of this express warranty.

4.    The Parties understand and acknowledge that this Settlement Agreement is subject to approval by the Court and that this Settlement Agreement shall not be binding upon the Parties until the entry by the Court or an appellate court, where applicable, of a final order approving this Settlement Agreement ("Final Order"). For purposes of this Settlement Agreement, a "Final Order" means an order approving this Settlement Agreement, the operation or effect of which has not been stayed, reversed or amended and as to which the time to appeal or move for review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending. The Trustee will seek approval of this Settlement Agreement within five (5) business days of receipt of this executed Settlement Agreement.

5.    If this Settlement Agreement is not approved by the Court or the Court's order approving this Settlement Agreement is reversed by a higher court, the Settlement Agreement shall be deemed null and void and of no force or effect, whereupon the Parties shall promptly submit a revised joint scheduling order for the completion of discovery, mediation and trial in the Adversary Proceeding.

6.    Upon Defendant's receipt of a fully executed copy of this Settlement Agreement and entry of a Final Order, Defendant hereby: (a) releases, acquits, and discharges the Trustee, the Debtors, the Debtors' estates, their retained professionals, and their respective successors and

assigns, of and from any claims, damages, actions, suits, causes of action, rights, liens, demands, obligations and/or liabilities of any kind existing as of the date this Settlement Agreement is executed by Defendant; and (b) waives and releases any claim, including without limitation, any administrative expense claim, that Defendant may have against the Debtors' estates arising out of the Agreements, this Settlement Agreement or otherwise.

7. Upon the Trustee's receipt of a fully executed copy of this Settlement Agreement and entry of a Final Order, the Trustee, on behalf of itself, the Debtors, the Debtors' estate, their retained professionals, and their respective successors and assigns (a) hereby releases, acquits and discharges Defendant and his successors and assigns from and against any claims, damages, actions, suits, causes of action, rights, liens, demands, obligations and/or liabilities of any kind existing as of the date this Settlement Agreement is executed by Defendant; and (b) shall cause the Adversary Proceeding to be dismissed with prejudice within ten (10) days after the entry of the Final Order.

8. The Parties acknowledge that this Settlement Agreement is a compromise of disputed claims and that neither admits, and each expressly denies, any liability on its part.

9. Each person signing this Settlement Agreement represents and warrants that he/she has been duly authorized and has the requisite authority to execute and deliver this Settlement Agreement on behalf of such Party, to bind such Party to the terms and conditions of this Settlement Agreement and to act on behalf of such Party with respect to the rights and claims that are being altered or otherwise affected by this Settlement Agreement.

10. The Parties represent and acknowledge that, in executing this Settlement Agreement, they do not rely and have not relied upon any representation or statements made by any Party or any of their agents, shareholders, representatives or attorneys, with regard to the

subject matter, basis or effect of this Settlement Agreement or otherwise, other than as specifically stated in this Settlement Agreement.

11.     The Parties further declare that, in making this Settlement Agreement, they rely entirely upon their own judgment, beliefs and interest and the advice of their counsel (for whose expense each shall be solely responsible) and that they have had a reasonable period of time to consider this Settlement Agreement.

12.     The Parties agree that each Party has reviewed this Settlement Agreement and that each fully understands and voluntarily accepts all the provisions contained in this Settlement Agreement.     The Parties further agree that this Settlement Agreement was the product of negotiations between the Parties and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.

13.     The language of all parts of this Settlement Agreement shall in all cases be construed as a whole. according to its fair meaning and not strictly for or against any of the Parties.

14.     Should any immaterial provision of this Settlement Agreement be declared or be determined by any court of competent jurisdiction to be illegal. invalid. or unenforceable, the legality. validity, and enforceability of the remaining parts. terms or provisions shall not be affected thereby and said illegal, unenforceable or invalid part. term, or provision shall be deemed not to be a part of this Settlement Agreement.

15.     This Settlement Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof.

16. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties, their respective heirs, executors, successors, administrators and assigns.

17. This Settlement Agreement may be executed in one or more counterparts, including by facsimile and/or electronic mail, each of which shall be deemed and original, but all of which together constitute one and the same instrument.

Dated: August _26_, 2011

_____
STEVEN M. WILLIAMS


TRUSTEE ON BEHALF OF DEBTORS:

_____
Peter L. Tourtellot, Trustee for
Renegade Holdings, Inc., Alternative
Brands, Inc. and Renegade Tobacco
Company

7

16.     This Settlement Agreement shall be binding upon and inure to the benefit of the

Parties, their respective heirs, executors, successors, administrators and assigns.

17.     This Settlement Agreement may be executed in one or more counterparts,

including by facsimile and/or electronic mail, each of which shall be deemed and original, but all

of which together constitute one and the same instrument.

Dated: August _8_, 2011

_____
STEVEN M. WILLIAMS


TRUSTEE ON BEHALF OF DEBTORS:


_____
Peter L. Tourtellot, Trustee for
Renegade Holdings, Inc., Alternative
Brands, Inc. and Renegade Tobacco
Company

7

<u>**EXECUTIVE EMPLOYMENT AGREEMENT**</u>

THIS EMPLOYMENT AGREEMENT is made as of the 11th day of August, 2010, by and between RENEGADE HOLDINGS, INC., ALTERNATIVE BRANDS, INC., and RENEGADE TOBACCO COMPANY (collectively, the "Company") and Steve Williams, a resident of the State of North Carolina (the Employee, referred to herein as "<u>you</u>").

<u>RECITALS</u>

WHEREAS, Renegade Holdings, Inc., is a holding company and the parent of a number of controlled corporations and/or other entities including but not limited to Alternative Brands, Inc., and Renegade Tobacco Company (herein the "Consolidated Companies") that are engaged, respectively, in one or more aspects of manufacturing and distributing cigarettes, cigars, and other related products (the "<u>Business</u>");

WHEREAS, you have served the Company as president since August, 2010.

WHEREAS, the Company recognizes that you are currently an employee at will, and do not have an employment agreement with the Company;

WHEREAS, the Company has significant operating and reporting requirements post-confirmation in order to adhere to the confirmed plan of reorganization and has determined that your continued service is a critical aspect of achieving operating performance necessary to fully consummate the confirmed plan of reorganization;

WHEREAS, the Company acknowledges that it is in the best interest of the Company as the Reorganized Debtors and of its creditors that you remain employed as president throughout the term of the plan of reorganization;

WHEREAS, the Company acknowledges that it is in the best interest of the Company and of its creditors that your are bound by a non-competition and a non-solicitation agreement;

WHEREAS, the Company recognizes that by continuing employment with the company post-confirmation, you are accepting a significant personal financial risk associated with the difficult regulatory and market environment;

WHEREAS, the Company acknowledges that you have numerous other business opportunities that would provide a less risky financial incentive; and

WHEREAS, the Company intends to mitigate your financial risk of accepting continued employment with the Company through the terms of this Agreement;

NOW THEREFORE, for and in consideration of your employment by the Company, the above premises and the mutual agreements hereinafter set forth, you and the Company agree as follows:

1.      <u>Definitions.</u>

      (a)      "<u>Cause</u>" shall mean (i) your commission of any act of fraud or dishonesty relating to and materially adversely affecting the business affairs of the Company; (ii) your gross negligence; (iii) your willful misconduct; (iv) your material breach of this Agreement; or (v) your conviction of any felony; provided that no termination for Cause by reason of (iv) above shall become effective until after written notice specifying such failure and a reasonable opportunity to cure such failure has been provided to you.

      (b)      "<u>Company Information</u>" shall mean collectively the Confidential Information and Trade Secrets. Company Information also includes information that has been disclosed to the Company by a third party and that the Company or its affiliates are obligated to treat as confidential.

      (c)      "<u>Confidential Information</u>" shall mean any and all proprietary business information of the Company or its affiliates treated as confidential or secret by the Company or its affiliates (that is, it is the subject of efforts by such party or its affiliates that are reasonable under the circumstances to maintain its secrecy) that does not constitute a trade secret, including, without limitation, any and all such proprietary information of such party or its affiliates of which the other party becomes aware as a result of its access to and presence at such party's facilities.



(d)     "Total Disability" shall mean your inability, through physical or mental illness or accident, to perform the essential functions of your usual duties and responsibilities hereunder (as such duties are constituted on the date of the commencement of such disability) with or without reasonable accommodation in the manner and to the extent required under this Agreement for a period of at least forty-five (45) CONSECUTIVE DAYS. Total Disability shall be deemed to have occurred on the first day following the expiration of such period;

(4)     The Company may deduct from each payment of Base Salary or Performance Bonus, if any, all amounts required to be deducted and withheld in accordance with applicable federal and state income, FICA and other withholding tax requirements.

(b)     Expenses. While you are performing the services described herein, the Company shall, upon your request, reimburse you for all reasonable and necessary expenses incurred by you in connection with the performance of your duties of employment hereunder. All reimbursements to you for expenses shall be reasonably documented and timely submitted for reimbursement to the Company, and shall otherwise comply with the Company's expense reimbursement policy, if any, then in effect. Reasonable expenses would include reimbursement for mileage when using you personal car in the course of company business.

(c)     Insurance. During the Term and any Severance Period (as herein defined) you shall be eligible to participate in any health, including family and dependent care, medical, disability and term life insurance coverage made available by the Company to its employees in accordance with any group plan which it now maintains or which may hereafter be established by the Company. You may elect to be reimbursed for your own insurance currently in place.

(d)     Vacation. You shall receive not less than four (4) weeks paid vacation during each twelve (12) month period of your employment. Such vacation period may be changed from time to time and at any time by the Company but shall in no event be shortened to less than four (4) weeks per twelve (12) month period.

## 5. Escrow Account Grant

Upon execution of the Agreement, you will receive a Grant, pursuant to the Assignment, attached as Exhibit 1. The Grant shall be of a ten percent (10%) interest in the escrow account balance as of August 11th, 2010. The Company shall provide written authorization to the Escrow Agent to make all payments directly to you under the Assignment and to issue you a Form 1099 for the tax year in which such payments are made.

## 6. Termination.

(a)     Your employment may be terminated only as follows:

(1)     For Cause Immediately by the Company; or

(2)     At your option, because of a material breach of this Agreement by the Company which is not cured within thirty (30) days after written notice of such breach is delivered to the Company; or

(3)     At your option upon thirty (30) days prior written notice of termination delivered by you to the Company; or

(4)     By the Company, at any time, with or without cause, upon delivery of written notice of termination at least thirty (30) days prior to the effective date of such termination; or

(5)     By the Company upon your death; or

(6)     By the Company because of your Total Disability upon thirty (30) days prior written notice of termination delivered to you.

(b)     If the company terminates your employment for other than "Cause" or you terminate your employment for reasons of a breach by the Company of this Agreement (as described in Section 6(a)(2) above);

(1)     you shall continue to be paid the Base Salary in accordance with the payment terms of Section 4(a)(1) until (6) months following such termination (the "Severance Period");

(2)     to the extent permissible under then existing plans, the health, medical, life and disability coverage afforded to you by the Company as set forth in Section 4(d) shall be continued for the Severance Period; and

(3)     such termination is subject to the terms and conditions of the Assignment, and you will maintain all Escrow Account Grant rights as provided in such Assignment.

(c)     In the event that your employment is terminated by you at your option for reasons other than a breach of this Agreement by the Company, the Company will be obligated to pay to you the full amount of Base Salary earned by you through the effective date of your termination. In no event shall the Company be obligated to pay you any Performance Bonus or otherwise or to provide you with any benefits arising hereunder or otherwise. Such termination is subject to the terms and conditions of the Assignment and you will maintain all Escrow Account Grant rights as provided in such Assignment.

(d)     In the event that your employment is terminated by the Company for Cause, the Company's sole obligation will be to pay you the amount of Base Salary, accrued but unpaid through the effective date of termination. In no event shall the Company be obligated to pay you any Performance Bonus or otherwise or to provide you with any benefits arising hereunder or otherwise. Such termination is subject to the terms and conditions of the Assignment and you will maintain all Escrow Account Grant rights as provided in such Assignment.

(e)     In the event that your employment is terminated due to your death, the Company will pay to your surviving spouse, for a period of six (6) months following your death, your Base Salary in accordance with Section 4, and to the extent permitted under the terms of the applicable plans, will also during that period provide your surviving spouse with life and medical insurance coverage under the Company's then current benefit plans, provided life insurance and medical coverage had previously been provided to the surviving spouse prior to your death. Such termination is subject to the terms and conditions of the Assignment and you will maintain all Escrow Account Grant rights as provided in such Assignment.

7.     **Non-Competition.** You agree that during your employment with the Company and thereafter for so long as you own an interest in the escrow account pursuant to the Assignment, you shall not, on your own behalf or on another's behalf, except on behalf of the Company, work in any management or executive capacity in the Business (as defined above) of the Company. This restriction shall apply worldwide. You agree that because of the nature of the Company's business, the nature of your job responsibilities, and the nature of the Confidential Information and Trade Secrets of the Company which the Company will give you access to, any breach of this provision by you would result in the inevitable disclosure of the Company's Trade Secrets and Confidential Information to its direct competitors.

8.     **Customer Non-Solicitation.** You agree that during your employment with the Company and thereafter for so long as you own an interest in the escrow account pursuant to the Assignment, you will not, except on behalf of the Company, directly or indirectly solicit, contact, call upon, communicate with or attempt to communicate with any customer or client of the Company for the purpose of engaging in the Business in competition with the Company (as defined above.) This restriction shall apply only to any customer or client of the Company with whom the Company did business during the last five years of your employment with the Company.

9.     **Employee Non-Solicitation.** You agree that during your employment with the Company and thereafter for so long as you own an interest in the escrow account pursuant to the Assignment, you will not, except on behalf of the Company, recruit, hire or attempt to recruit or hire, directly or by assisting others, any other employee of the Company with whom you had contact during your employment with the Company.

10.     **Termination of Restrictive Covenants.** In the event of a winding-up, dissolution or general cessation of business by the Company, the covenants established by Sections 7, 8 and 9 shall automatically terminate upon the happening of such event(s); provided, however, that such covenant may be assigned and transferred by the Company to any party acquiring all or substantially all of the assets and business of the Company. If for any reason, the benefits arising out of the Assignment cease, the covenants established by Sections 7, 8 and 9 shall automatically terminate.

11.     **Remedies.** You agree that the covenants contained in Sections 7, 8 and 9 are of the essence of this Agreement; that each of the covenants is reasonable and necessary to protect the business, interest and properties of the Company; and that irreparable loss or damage will be suffered by the Company should you breach any of the covenants. Therefore, you agree that in addition to all

remedies provided by law or in equity, the Company shall be entitled to a temporary restraining order and temporary and permanent injunction to prevent a breach or contemplated breach of any of the covenants.

12.     **Severability.** In case any one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect by a court of competent jurisdiction, the validity of the remaining covenants set forth herein shall not be affected thereby. If any provision contained herein shall for any reason be held excessively broad or unreasonable as to time, territory, or interest protected, the court is hereby empowered to construe said provision by narrowing it, so as to make it reasonable and enforceable to the extent provided under applicable law.

13.     **Assignment.** This Agreement and the rights and obligations of the hereunder may not be assigned, transferred, pledged or encumbered in any way and any attempted assignment, transfer, pledge, encumbrance or other disposition shall be null and void; provided that, the Company may assign this Agreement to any successor entity to all or substantially all the Company's ownership interests or business and assets.

14.     **Notices.** Except as otherwise specifically provided herein, any notice required or permitted to be given to you pursuant to this Agreement shall be given in writing, and personally delivered or mailed to you by certified mail, return receipt requested, at the address set forth below your signature on this Agreement or at such other address as you shall designate by written notice to the Company given in accordance with this Section 14, and any notice required or permitted to be given to the Company shall be given in writing, and personally delivered or mailed to the Company by certified mail, return receipt requested, addressed to the Company at the address set forth under the signature of the Company or his designee on t his Agreement or at such other address as the Company shall designate by written notice to you given in accordance with this Section 14. Any notice complying with this Section 14 shall be deemed received upon actual receipt by the addressee.

15.     **Waiver.** The waiver by either party hereto of any breach of this Agreement by the other party hereto shall not be effective unless in writing, and no such waiver shall operate or be construed as the waiver of the same or another breach on a subsequent occasion.

16.     **Governing Law.** This Agreement and the rights of the parties hereunder shall be governed by and construed in accordance with the laws of the internal laws of the State of North Carolina without regard to conflicts of laws.

17.     **Beneficiary.** All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns. Nothing in this Agreement is intended to confer on any person or entity other than the parties hereto, and their respective successors and permitted assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement. Notwithstanding the foregoing, the Company's affiliates are intended third party beneficiaries of your covenants and agreements hereunder.

18.     **Entire Agreement.** This Agreement and the Assignment embody the entire agreement of the parties hereto relating to your employment by the Company in the capacity herein stated and, except as specifically provided herein, no provisions of any employee manual, personnel policies, Company directives or other agreement or document shall be deemed to modify the terms of this Agreement or the Assignment. No amendment or modification of this Agreement shall be valid or binding upon you or the Company unless made in writing and signed by the parties hereto. All prior understandings and agreements relating to your employment by the Company, in whatever capacity, are hereby expressly terminated.

19.     **Confidentiality.** The terms, conditions and existence of this Agreement shall be confidential. You will (a) hold the Company Information in confidence and (b) will not use, duplicate, reproduce, distribute, disclose or otherwise disseminate the Company Information except in the ordinary course of your duties as the President of the Company.

20.     **Amendments.** This Agreement shall not be modified or amended except pursuant to an instrument in writing executed and delivered on behalf of each of the parties hereto.

[Signature Page Follows]

RENEGADE TOBACCO COMPANY

_[signature]_

Name: Calvin G. Phelps

Title: Sole Shareholder

Address: 321 Farmington Road
Mocksville, NC 27028


THE ESCROW AGENT:

SUNTRUST BANK


By _____

Name:

Title:

Address: 112 S. Tryon Street, Suite 100
Charlotte, NC 28202

THE EMPLOYEE:
Steven M. Williams

_[signature]_

6012 Bayfield Pkwy
Box 104
Concord, NC 28027
Address:

SHERRI CREASON KISER
NOTARY PUBLIC
Iredell County, North Carolina
My Commission Expires April 8 2013

Sherri Creason Kiser

aug. 11, 2010

THIS ESCROW ACCOUNT AMENDMENT AND ASSIGNMENT AGREEMENT (the "Escrow Agreement Amendment") is made as of the 11th day of August, 2010, by and among RENEGADE HOLDINGS, INC., ALTERNATIAVE BRANDS, INC., and RENEGADE TOBACCO COMPANY (collectively, the "Company"), Steven M. Williams, a resident of the State of North Carolina (the "Employee"), and SUNTRUST BANK (the "Escrow Agent").

RECITALS

WHEREAS, this Escrow Agreement Amendment is intended to provide additional consideration to Employee for entering into and providing services to the Company;

WHEREAS, pursuant to the statutes and regulations associated with the tobacco industry's Master Settlement Agreement and related state and federal statues, the Company has created an escrow account (for which any interest earned is immediately available and the principal shall be available on a rolling basis in the future, subject to any claims made by the states) (the "Escrow Account");

WHEREAS, the Company and Escrow Agent are parties to the Multiple Entity Escrow Agreement dated the 26th day of June 2006 (the "Escrow Agreement"); the Instrument of Resignation, Appointment, and Acceptance ("the Instrument"); modifying the Escrow Agreement dated July 2004; and the Escrow Agreement dated the 21st day of March 2008 (the Arizona Escrow Agreement"), which govern the Escrow Account (the "Escrow Agreement");

WHEREAS, as set forth herein, the Company desires to amend the Escrow Agreement to assign certain of its rights in the Escrow Account to Employee; and

WHEREAS, Section 15 of the Escrow Agreement provides that the "Escrow Agreement may be amended only by written instrument executed by the Company and Escrow Agent."

NOW THEREFORE, for and in consideration of Employee's past services and his entering into and continuing to provide services to the Company, the above premises and the mutual agreements hereinafter set forth, the Company, Employee, and Escrow Agent do hereby amend the Escrow Agreement as follows:

1.     Definitions. All terms not specifically defined herein shall have the meaning ascribed to them in the Escrow Agreement or the Master Settlement Agreement, as applicable.

a.     Employee's Ownership Interest. This will be the Employee's percentage of the Principal in the Escrow Account.

b.     Grant. This will mean the granting of an irrevocable and vested interest in the Company's interest in and right to receive income and principal from the escrow trust fund established pursuant to the statutes and regulations associated with the tobacco industry's Master Settlement Agreement and related state and federal statutes and laws and memorialized in this Escrow Agreement Amendment.

c.     Earned Interest. This will be the interest that the Employee's Ownership Interest accumulates on deposit, less the Escrow Agent's fees, costs, and expenses (as set forth in Paragraph 9 of the Escrow Agreement) that are attributable to the Employee's Ownership Interest.

d.     Principal. This is the total balance of the Escrow Account, including all state subaccounts, but excluding Earned Interest.

e.     "Termination by Company for Cause" shall mean the termination of Employee's employment with the Company because of (i) his commission of any act of fraud or dishonesty relating to and materially adversely affecting the business affairs of the Company; (ii) his gross negligence; (iii) his willful misconduct; (iv) his material breach of his obligations; or (v) his conviction of any felony; provided that no termination for Cause by reason of (iv) above shall become effective until after written notice specifying such failure and a reasonable opportunity to cure such failure has been provided to him. Any other termination of Employee's employment at the instance of the Company shall be considered a "Termination by Company without Cause".

EXHIBIT
B
to Settlement

f.         "Termination by Employee for Cause" shall mean the termination of Employee's employment with the Company because of (i) the Company's material breach of this Agreement; or (ii) Employee's receipt of thirty (30) days' notice that the Company intends to terminate his employment without Cause; or (iii) Employee's voluntary retirement after his Employee's Ownership Interest reaches fifteen percent (15%) ; provided that no termination for Cause by reason of (i) above shall become effective until after written notice specifying such failure and a reasonable opportunity to cure such failure has been provided to the Company. Any other termination of Employee's employment that is voluntary on Employee's part shall be considered a "Termination by Employee without Cause". Death or Total Disability as defined in Paragraph 1(g) below, are not considered voluntary on Employee's part.

g.         "Total Disability" shall mean Employee's inability, through physical or mental illness or injury, to perform the essential functions of his position (as his position is constituted on the date of the commencement of such disability) in the manner and to the extent required under this Agreement for a period of at least forty-five (45) consecutive days, and where no reasonable accommodation is possible or would be an undue hardship on the Company. Total Disability shall be deemed to have occurred on the first day following the expiration of such period.

h.         Valuation Date. This is July 1, 2010, and January 1 and July 1 of each year thereafter until Employee's employment with the Company terminates.

2.         **Grant.** Subject to all of the terms of the Escrow Agreement and this Escrow Agreement Amendment, upon execution of this Escrow Agreement Amendment, the Company shall Grant Employee's Ownership Interest to Employee in the amount of ten percent (10%) of the Principal as of August 11, 2010, subject to the rights and interests of the Beneficiary States in and to their respective sub-accounts as set forth in the Escrow Agreement.

3.         **Valuation.** The value of the Escrow Account balance as of January 1, 2010, is Thirty-two Million Two Hundred Seventy-One Thousand Two Hundred Thirty-Six Dollars ($32,271,236.00). The value of the Employee's Ownership Interest shall be calculated on each Valuation Date and (if applicable) the date that Employee's employment with the Company terminates. For purposes of calculating the Employee's Ownership Interest, any deposits that have been made to the Escrow Account prior to a Valuation Date will be added to the Principal as of the Valuation Date regardless of whether such balances appear on the applicable bank statement.

4.         **Earned Interest Income Distributions.** Employee shall be entitled to periodic distributions, at least as frequently as any distributions made to the Company, of the Earned Interest, subject to any right or interest of any creditors of the Company holding a valid, enforceable and properly perfected security interest in distributions of interest income from the Escrow Account.

5.         **Principal Distributions.** In the event of a distribution of the Principal, Employee shall receive a percentage of the distribution that is equal to the Employee's Ownership Interest as of the date of the distribution, subject to the rights and interests of the Beneficiary States in and to distributions of Principal from their respective sub-accounts as set forth in the Escrow Agreement. The dollar amount of any and all such distributions of Principal shall be subtracted from the absolute dollar value of the Employee's Ownership Interest. The Employee shall receive no further distributions after the absolute dollar value of the Employee's Ownership Interest has reached zero (0).

6.         **Released Claims.** In the event that the Principal is subject to any Released Claims as defined in the Escrow Agreement and/or the Master Settlement Agreement and to be paid to the states as provided for under applicable state statutes, the Employee's Ownership Interest shall be sued to pay such released claims in a percentage equal to the Employee's Ownership Interest. For example, if the Employee's Ownership Interest was 10% of the Principal at the time a claim was paid to a state, the Employee's Ownership Interest would be reduced by 10% of the amount paid to the state.

7.         **Termination due to Death or Total Disability of Employee.** It the Employee's employment is terminated due to the death or Total Disability of the Employee, the Employee's Ownership Interest shall remain constant and its value shall be calculated as of the next Valuation Date after the date of Death or date of determination of Total Disability, as applicable.

9.         **Representations by the Company and the Escrow Agent.** The Company hereby represents as follows:

(a)        The funds in the Escrow Account are not encumbered with the exception of notes to the Bank of the Carolinas. There is no interest in the funds in the Escrow Account that has priority over the Employee's interest, with the exception of the Bank of the Carolinas and the rights and interests of the Beneficiary States in and to their respective sub-accounts as set forth in the Escrow Agreement.

(b)     In the event that income generated in the Escrow Account is assigned in the future, the Company agrees that it will segregate ten percent (10%) of such funds from assignment so that the Employee can accrue all amounts owing to him under this Agreement without encumbrance or limitation, notwithstanding the assignment. Provided, however, that if Employee's employment with the Company was terminated before such assignment, the Company shall be obligated to segregate only the percentage corresponding to the Employee's Ownership Interest, calculated as set forth in Paragraph 8.

10.     **Communications.** The Employee will be included in all correspondence between the Company and the Escrow Agent. The Escrow Agent will have a dual reporting obligation to both Employee and the Company on all statements of accounts.

11.     **Sale of the Company.** In the event that the Company is sold, including its rights to the Escrow Account, Employee's Ownership Interest will immediately become ten percent (10%), and the sale agreement will incorporate this Agreement by reference and will specifically preserve all of the Employee's rights under this Agreement.

12.     **Taxation.** Payments made under this Escrow Agreement Amendment shall not be subject to withholding. The Escrow Agent shall issue to Employee and IRS Form 1099 in each calendar year that payments are made to Employee. Employee is solely responsible for any and all tax liability arising out transactions contemplated hereby.

13.     **Severability.** In case any one or more of the provisions of this Escrow Agreement Amendment shall for any reason be held to be invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, the validity of the remaining covenants set forth herein shall not be affected thereby.

14.     **Assignment.** This Escrow Agreement Amendment and the rights and obligations hereunder may not be assigned, transferred, pledged or encumbered in any way and any attempted assignment, transfer, pledge, encumbrance or other disposition shall be null and void without the written consent of the parties; provided that, after the termination of the Employee's employment for any reason, the Employee may assign his rights under this Escrow Agreement Amendment to this spouse, children, or estate, or a trust, by written instruction to the escrow agent. If Employee dies before making such assignment, his rights will automatically become part of his estate. If Employee becomes legally incompetent before making such assignment, his rights will automatically be assigned to his spouse as of the time that he is adjudged incompetent.

15.     **Waiver.** The waiver by any party hereto of any breach of this Escrow Agreement Amendment by the other party hereto shall not be effective unless in writing, and no such waiver shall operate or be construed as the waiver of the same or another breach on a subsequent occasion.

16.     **Governing Law.** This Escrow Agreement Amendment and the rights of the parties hereunder shall be governed by and construed in accordance with the laws of the internal laws of the State of North Carolina without regard to conflicts of laws.

17.     **Beneficiary.** All of the terms and provisions of this Escrow Agreement Amendment shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns. Nothing in this Escrow Agreement Amendment is intended to confer on any person or entity other than the parties hereto, and their respective successors and permitted assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement.

18.     **Entire Agreement.** This Escrow Agreement Amendment and the Escrow Agreement which it amends embody the entire agreement of the parties hereto relating to the Employee's Ownership Interest in the Principal and, except as specifically provided herein, no provisions of any employee manual, personnel policies, Company directives or other agreement or document shall be deemed to modify the terms of this Escrow Agreement Amendment. All prior understandings and agreements relating to Employee's Ownership Interest in the Principal, in whatever capacity, are hereby expressly terminated.

19.     **Confidentiality.** The terms, conditions and existence of the Escrow Agreement Amendment shall be confidential.

20.     **Amendments.** This Escrow Agreement Amendment shall not be modified or amended except pursuant to an instrument in writing executed and delivered on behalf of each of the parties hereto. Employee must be a party to any modification of the Escrow Agreement, the Instrument, or the Arizona Escrow Agreement, to the extent that modification of any of these agreements affects Employee's rights under this Escrow Agreement Amendment.

21.     **Counterparts.** This Escrow Agreement Amendment may be executed in one or more counterpart signature pages, each of which will be deemed to be an original copy of this Escrow Agreement Amendment and all of which, when taken together, will be

deemed to constitute one and the same agreement. Signatures of a party transmitted by facsimile or other electronic means shall be deemed to be its original signatures for all purposes.

**22.** **Arbitration.** Any dispute or claim arising out of, or in connection with, this Escrow Agreement Amendment shall be finally settled by binding arbitration in the state of North Carolina, in accordance with the then-current rules and procedures of the American Arbitration Association by one (1) arbitrator appointed by the American Arbitration Association. The arbitrator shall apply the law of the State of North Carolina, without reference to rules of conflict of law or statutory rules or arbitration, to the merits of any dispute or claim. Judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction. In the event any action or proceeding is brought in connection with this Escrow Agreement Amendment, each party shall be responsible for its own costs and attorneys' fees.

[Signature Page Follows]

IN WITNESS WHEREOF, the Company, Employee, and Escrow Agent have executed and delivered this Agreement as of the date first shown above.

**THE COMPANY:**

**RENEGADE HOLDINGS, INC.**

By: _____

Name: Calvin C. Phelps

Title: Sole Shareholder

Address: 321 Farmington Road
         Mocksville, NC 27028

**ALTERNATIVE BRANDS, INC.**

By: _____

Name: Calvin C. Phelps

Title: Sole Shareholder

Address: 321 Farmington Road
         Mocksville, NC 27028

IN WITNESS WHEREOF, you and the Company have executed and delivered this Agreement as of the date first shown above.

THE COMPANY:

YOU, THE EMPLOYEE:

RENEGADE HOLDINGS, INC.

Steve M. Williams

By: _____ Sole Shareholder

ALTERNATIVE BRANDS, INC.

By: _____ Sole Shareholder

RENEGADE TOBACCO COMPANY

By: _____ Sole Shareholder

Address: 321 Farmington Road
Mocksville, NC 27028

Address:

SHERRI CREASON KISER
NOTARY PUBLIC
Iredell County, North Carolina
My Commission Expires April 8, 2013

Sherri Creason Kiser

Aug. 11, 2010

CERTIFICATE OF SERVICE

This is to certify that on this day, the undersigned served a copy of the ***Plaintiff's Motion for Approval of a Compromise and Settlement*** on the following parties in interest by automatic electronic noticing.

| | |
|---|---|
| A. Burton Shuford<br>THE BAIN GROUP, PLLC<br>8301 University Executive Park Dr., Ste 120<br>Charlotte, NC  28262 | |

This the 8th day of September, 2011.

s/ Vicki L. Parrott
Vicki L. Parrott
1414 Raleigh Road, Suite 435
Chapel Hill, NC  27517
Telephone:  919-968-4441
Fax:  919-942-6603
vlp@nbfirm.com

4