UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| IN THE MATTER OF: | |
|---|---|
| Renegade Holdings, Inc., et al | Case No. 09-50140<br>Chapter 11<br>Consolidated for Administration |
| Debtors | |
| Report Of Sale | |

Now come Renegade Holdings, Inc. ("RHI"), Alternative Brands, Inc. ("ABI") and Renegade Tobacco Co. ("RTC" and collectively, the "Debtors"), and submits the following Report of Sale:

1. The Debtors, by and at the direction of Peter Tourtellot (the "Trustee"), filed with the Bankruptcy Court a Motion To (A) Approve Sale Of Substantially All Assets, (B) Establish Bidding Procedures And Approve Break-up Fee, (C) Transfer Any And All Claims, Liens, Encumbrances And Interests In Sale Assets To Proceeds Of Sale, (D) Approve Form And Manner Of Notice Of Sale, (E) Assume And Assign Certain Leases And Executory Contracts, And (F) Schedule Hearings To Establish Sales Procedures And Confirm Sale (the "Sale Motion").

2. In the Sale Motion, the Debtors sought an order authorizing the sale of substantially all the Debtors' assets (the "Sale Assets"), and the assignment of certain contracts and leases (the "Assumed Agreements"), to CB Holdings, LLC ("CB") or to any party, or combination of parties, submitting the highest and best bids (the "Prevailing Bidder(s)"). The Sale Assets include the Debtors' "Escrow Rights" as well as the Debtors' tobacco product manufacturing operations, which includes inventory, accounts receivable and other tangible and intangible assets as a going concern, excluding certain assets such as funds on deposit and causes of action, all as more particularly set forth in the Sale Motion and exhibits thereto.

3. With respect to the Debtors' Escrow Rights, ABI is a tobacco products manufacturer that has not signed the 1998 tobacco Master Settlement Agreement ("MSA") and is, therefore, known as a Non-Participating Manufacturer ("NPM"). As an NPM, ABI is required under the laws of North Carolina (N.C. Gen. Stat. §§ 66-290 through 66-294.1 and §

105-113.4C) and under the laws of most other states to maintain a Qualified Escrow Fund ("QEF"). The current aggregate principal balance in all of ABI's QEFs is about $40 million, and the proposed sale provides that at closing a portion of the sale proceeds will be applied to cure the present deficiency in the QEFs which will in turn increase the balance therein to approximately $48 to $50 million.

4. On August 19, 2011, the Court entered the "Bidding Procedures Order" (Docket #1008), which authorized the Debtors to solicit Bids for (i) all the Sale Assets, (ii) only the Debtor's Escrow Rights, or (iii) only the business as a going concern excluding the Debtor's Escrow Rights and, if one or more Qualified Bids were timely received by the Debtors, to conduct an auction on October 4, 2011. The final hearing to approve the Sale (the "Sale Approval Hearing") is scheduled to be held before the Bankruptcy Court at 9:30 o'clock a.m. on October 12, 2011, in Courtroom #1, U. S. Bankruptcy Court, 101 South Edgeworth Street, Greensboro, North Carolina.

5. No Qualifying Bids were received by the Debtors, so no auction was conducted and the matter before the Court is whether the proposed sale to CB Holdings, LLC should be approved. For the reasons set forth below, the Trustee submits that the sale as presently structured should not be approved.

6. As set forth in the Sale Motion, the Asset Purchase Agreement values the Assets and thus sets the purchase price, assuming a Closing on or about October 31, 2011, at approximately $16,092,000 in the aggregate, calculated as follows:

    a. $11,592,000 for the Total Escrow Value, based upon 23% of approximately $50,400,000 which is a combination of the following:
        i. 23% of funds on deposit at closing, estimated to be approximately $41,900,000; plus
        ii. 23% of the Delinquent Amount, estimated at $7,500,000 plus approximately $1,000,000 for the disputed claim by Missouri.
    b. $1,100,000 as the estimated collections on the Accounts Receivable.
    c. $2,000,000 as the estimated sale proceeds from the Inventory.
    d. $1,400,000 for all other tangible and intangible Sale Assets.

7. Missouri's claim for delinquent escrows was filed in the amount of $5,000,000. Based upon information available to the Debtors, the Trustee believes the correct amount of the Missouri escrow claim is between a low of $340,406 and a high of $1,545,853, depending upon the amount of the "Allocable Share Release" but the claim has not been reconciled by agreement or Court order.

8. On September 30, 2011, the Settling States filed an amended proof of claim for delinquent escrows in the aggregate amount of $16,711,642 consisting of:

   a. $8,381,043 of delinquent escrows owed to various States, most of which is not in dispute.
   b. $5,000,000 of delinquent escrows claimed by Missouri, which is the subject of dispute.
   c. $3,330,599 of delinquent escrows claimed by Tennessee, which is a new claim not previously asserted or acknowledged by the Debtors. According to the amended proof of claim, this new claim is the result of an audit conducted by Tennessee, but no documentation in support of such claim has been provided to the Debtors and the claim is thus disputed pending further investigation and review.

9. The APA requires the Debtors (as Seller) to deposit into the Escrow Account at closing the full Delinquent Amount, and to reserve sufficient funds to deposit any additional amounts in order to cure any deficiency. If the Delinquent Amount is finally determined to be equal to the amount alleged in the amended proof of claim, the purchase price will then be $17,980,678 calculated as follows:

   a. $13,480,678 for the Total Escrows, representing 23% of $58,611,642 (the projected Escrow Amount of $41,900,000 at closing plus the Delinquent Amount of $16,711,642 as alleged).
   b. $1,100,000 for the Accounts Receivable.
   c. $2,000,000 for the Inventory.
   d. $1,400,000 for all other Sale Assets.

10. Thus, virtually all of the sale proceeds of $17,980,678 would be deposited into the Escrow Account, the ownership of which would be transferred to the Buyer, in order to satisfy

the Delinquent Amount of $16,711,642. The estate would be left with about $1,269,000 to apply in payment of the secured claim of Bank of the Carolinas, costs of administration, priority tax claims and unsecured claims. Such an outcome would not be in the best interest of creditors.

11. At the Sale Approval Hearing, the Trustee intends to recommend that the proposed sale to CB Holdings, LLC not be approved by the Court, absent sufficient change in the terms and conditions of the sale which would insure that creditors are paid from the sale proceeds.

Respectfully submitted on this the 7th day of October, 2011.

/s/ John A. Northen

**Special Counsel for the Trustee:**
Northen Blue, LLP
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
Stephanie Osborne-Rodgers, NCSB #29374
sor@nbfirm.com
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
# WINSTON-SALEM DIVISION

| IN THE MATTER OF:<br><br>Renegade Holdings, Inc., et. al<br><br>Debtors | Case No. 09-50140<br>Chapter 11<br>Consolidated for Administration |
|---|---|
| **CERTIFICATE OF SERVICE** ||

I hereby certify that I have this day served a copy of the foregoing by automatic electronic service:

| | |
|---|---|
| Michael D. West<br>Bankruptcy Administrator<br>PO Box 1828<br>Greensboro, NC 27402 | Angela R. Collins<br>Riezman Berger, PC<br>7700 Bonhomme, 7th Floor<br>St Louis, MO 63105 |
| Karen Cordry<br>Patricia A. Molteni<br>National Association of Attorneys General<br>2030 M Street NW, 8th Floor<br>Washington, DC 20036 | Gregory B. Crampton<br>Nicholls & Crampton, PA<br>o/b/o National Assoc of Attorneys General<br>P O Box 18237<br>Raleigh, NC 27619 |
| Paul A. Fanning<br>Ward and Smith, PA<br>o/b/o Bank of the Carolinas<br>P O Box 8088<br>Greenville, NC 27835-8088 | Stuart C. Gaffreau, Esq.<br>Hagan Davis Mangum<br>Obo Carolina Bank<br>300 North Greene Street, Suite 200<br>Greensboro, NC 27401 |
| Kenneth M. Greene<br>Carruthers & Roth, PA<br>Obo Hauni Richmond, Inc.<br>235 N. Edgeworth Street<br>Greensboro, NC 27401 | Gina Baker Hantel<br>Obo Tennessee Dept of Revenue<br>P O Box 20207<br>Nashville, TN 20207 |
| Richard L. Harrison<br>Melissa L. Trippe<br>North Carolina Department of Justice<br>Post Office Box 629<br>Raleigh, NC 27602 | Gerald A. Jeutter, Jr.<br>P O Box 12585<br>Raleigh, NC 27605 |
| James C. Lanik<br>Obo Maxus Capital Group, LLC<br>Roberson Haworth & Reese, PLLC<br>P O Box 1550<br>High Point, NC 27261 | Rebecca A. Leigh<br>Suite 201<br>301 S. Greene St.<br>Greensboro, NC 27401 |

| G. Thompson Miller<br>Brinkley Walser, PLLC<br>Obo NewBridge Bank<br>P O Box 1657<br>Lexington, NC 27293-1657 | Richard M. Mitchell<br>Mitchell & Culp<br>1001 Morehead Square Drive<br>Charlotte, NC 28203 |
|---|---|
| Lisa P. Sumner<br>Poyner & Spruill, LLP<br>o/b/o Alliance One International, Inc.<br>P O Box 1801<br>Raleigh, NC 27602 | Gene B. Tarr<br>Examiner<br>P O Drawer 25008<br>Winston-Salem, NC 27114-5008 |
| G. Gray Wilson<br>Wilson Helms & Cartledge, LLP<br>Obo Calvin Phelps<br>110 Oakwood Drive, Suite 400<br>Winston-Salem, NC 27103 | Charles M. Ivey, III<br>Ivey McClellan Gatton & Talcott, LLP<br>Obo PTM Technologies, Inc.<br>P O Box 3324<br>Greensboro, NC 27402 |
| Gordon C. Woodruff<br>Attorney for CB Holdings, LLC<br>Woodruff & Fortner<br>P O Box 708<br>Smithfield, NC 27577 | |

And 2) by depositing a copy thereof in a U.S. Postal receptacle addressed to:

| Susan B. Curwood<br>Asst Attorney General<br>Commonwealth of Virginia<br>900 E. Main Street<br>Richmond, VA 23219 | |
|---|---|

This the 7th day of October, 2011.

/s/ John A. Northen

**Special Counsel for the Trustee:**
John A. Northen, NCSB #6789
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441